**Roy A. JOHNSON and John J. Sheller, Appellants in No. 84–5877,**

v.

**Verne ORR, Secretary; Francis Gerard, Major General; Wilfred C. Menard, Jr., Major General; Colonel John Murphy; Brigadier General Charles Young, Air Commander; Lt. Col. Billy McDaniels, Appellees.**

**Appeal of Verne ORR, Secretary of the Air Force, Cross-Appellant, in No. 84–5888.**

**Nos. 84–5877, 84–5888.**

United States Court of Appeals, Third Circuit.

Argued Sept. 10, 1985.

Decided Oct. 31, 1985.

See also, 3d Cir., 780 F.2d 386.

Martin Cohen (argued), American Federation of Government Employees, Philadelphia, Pa., Gay Snyder, New Brunswick, N.J., for appellants in No. 84–5877; Mark Roth, Gen. Counsel, American Federation of Government Employees, Washington, D.C., of counsel.

W. Hunt Dumont, U.S. Atty., Bette E. Uhrmacher, Asst. U.S. Atty. (argued), Trenton, N.J., for appellees.

Irwin I. Kimmelman, Atty. Gen. of the State of N.J., Dorothy Donnelly, Deputy Atty. Gen. (argued), Trenton, N.J., for Lt. Col. Billy McDaniels.

Before SEITZ, BECKER, and ROSENN, Circuit Judges.

## OPINION OF THE COURT

ROSENN, Circuit Judge.

Plaintiffs, Roy A. Johnson and John J. Sheller, formerly employed by the New Jersey Air National Guard (ANG or the Guard) as civilian technicians, were dismissed from employment for alleged labor activities in violation of federal law. The New Jersey Adjutant General who dismissed them acted upon a pretermination recommendation of a hearing examiner for the ANG who held that the technicians had indeed violated applicable federal statutes. Plaintiffs appealed under the provisions of the Administrative Procedure Act (APA), 5 U.S.C. § 701 (1982), to the United States District Court for the District of New Jersey seeking a reversal of the Adjutant General's decision.[1]

The court granted the plaintiffs' motion for summary judgment and entered judgment in their favor under the Administrative Procedure Act against the defendant, Verne Orr, Secretary of the Air Force, in his official capacity. This in effect reversed the terminations of their employment and may support their claims for back pay, claims that have been transferred by the district court to the United States Court of Claims. Secretary Orr timely appealed to this court from the summary judgment. The district court declined to reinstate the plaintiffs to employment, however, because it concluded they

no longer satisfied the federal statutory requirement for civil technicians that they also serve as military members of the ANG. They appeal the denial of this motion for reinstatement. We affirm.

### I.

Plaintiffs, who had been employed as aircraft mechanics in the night shift at the ANG 108th Tactical Fighter Wing at the McGuire Air Force Base (Tactical Wing), served also as stewards for the technicians' union, Local 377 of the American Federation of Government Employees (the Union). As stewards, their responsibilities included filing grievances on behalf of bargaining-unit members and keeping them advised of matters that might affect their working conditions. In the period immediately preceding plaintiffs' dismissal, the Tactical Wing was in transition from using the older F–105 aircraft to the new F–4D fighter-bomber. The United States Air Force established a schedule that required the Wing to complete its transition by October 1, 1981, and reach combat readiness status by that date. As the combat readiness date approached, Wing Commander General Young foresaw problems meeting the deadline. Complicating matters for him was the Union's request, made the preceding June, that he adjust the technicians' schedules to allow them a three-day Labor Day weekend.

The night shift technicians normally worked Tuesday through Saturday, approximately 2:00 P.M. to 10:30 P.M. In order to satisfy the Union's request for a three-day weekend and also to meet the transition schedule, the ANG allowed the technicians the Saturday of Labor Day weekend as a holiday, and instead required them to work the preceding Monday, August 31, 1981, from 7:30 A.M. to 4:00 P.M. The techni-

---

1. The complaint also alleged violations of 42 U.S.C. § 1983 (1982) and sought damages arising out of plaintiffs' dismissal from employment based on a denial of due process and a violation of their first amendment rights. The district court entered summary judgment for the defendants on plaintiffs' due process claims. The court then certified for appeal to this court the question whether the defendants acted "under color of state law" for purposes of 42 U.S.C. § 1983. That appeal is docketed to Nos. 84–5859 and 84–5860 and forms no part of the disposition of this appeal.

cians had no objection to working on Monday, but pointed out that their usual hours whenever they were assigned work on Mondays were 2:00 P.M. to 10:30 P.M. They also asserted that their collective bargaining contract entitled them to notice two weeks prior to the change to the earlier Monday hours.

On August 26, 1981, several night-shift technicians complained to plaintiff Johnson regarding the Monday schedule. That day, Johnson contacted Colonel Wingert, who dealt with scheduling problems. Colonel Wingert said that he would gather more information and then discuss the matter with Johnson. During a routine break that evening, the night-shift technicians gathered informally and Johnson related this exchange to them. Those present, including plaintiff Sheller, discussed their options, but reached no decision. Plaintiffs promised to seek advice from other union officials. The next day, August 27, Colonel Wingert told Johnson that the agency would require the technicians to work the reassigned shift on Monday. During that evening's authorized break, plaintiffs discussed management's decision with the technicians. Johnson, he so asserted during the ensuing litigation, told the technicians to comply with the revised schedule and promised that the Union would file a grievance and, if necessary, seek arbitration. On the other hand, the ANG claimed that the technicians discussed a number of options for disrupting the work schedule, including refusing to report at the scheduled time, taking unscheduled sick leave, or engaging in slow downs. On August 31, 1981, all night technicians complied with the new schedule and commenced work at 7:30 A.M.

On September 2, 1981, plaintiffs' supervisor, Colonel Murphy, a defendant, notified plaintiffs by letter of a proposal to terminate their employment because they had conducted a prohibited union meeting on official time and had advocated a work

slowdown and disruption of the Tactical Wing Mission. Plaintiffs made a detailed reply in writing to the proposed removal, in essence denying the allegations against them. On October 1, 1981, General Young, Wing Commander, sustained the charges contained in the proposed notice of removal and informed plaintiffs of their right to appeal his decision.

Plaintiffs appealed and Colonel Newman, a hearing examiner for the National Guard Bureau, conducted an administrative hearing. In his written opinion, Newman stated that plaintiffs were "charged with violation of 5 U.S.C. § 7131 by conducting Union business while the employees were in duty status and of 5 U.S.C. § 7116 by calling for and condoning a work slowdown and failing to take action to stop such activity." Newman concluded that plaintiffs had violated both sections and recommended that they be removed from employment as technicians. On January 26, 1982, defendant Menard, as State Adjutant General, implemented Newman's recommendation and discharged Johnson and Sheller.[2]

On August 6, 1982, plaintiffs filed this suit against Menard, Murphy, and Young in their individual capacities and against Verne Orr, Secretary of the Air Force, and Francis Gerard, Chief of Staff of the ANG, in their official capacities. Plaintiffs asserted that defendants acted arbitrarily and capriciously in violation of constitutional and statutory law. They further alleged that the actions in question were in retaliation for plaintiffs' union activities and for their exercise of first amendment rights to freedom of speech and association.

Defendants initially moved to dismiss the complaint for failure to state a claim or, in the alternative, for summary judgment. The district court, in its opinion of July 8, 1983, denied defendants' motion and ruled that plaintiffs had stated a cognizable claim. The court ruled that it had jurisdiction under the APA to review the decision of the Guard to terminate the plaintiffs.

---

**2.** Both the Union and the ANG filed charges of unfair labor practice with the Federal Labor Relations Authority (FLRA). The FLRA issued a complaint as to ANG's charges, but for jurisdictional reasons, declined to consider those of the Union.

The court subsequently granted plaintiffs' motion for summary judgment on their APA claim, thereby reversing the decision of the National Guard, and denied the defendants' motion for summary judgment. The court reversed the section 7131 charge for lack of evidence that the employees were on duty status at the time of the meeting. It reversed the section 7116 charge on an error of law: the statute governs activities of unions as organizations and does not address those of individual members. As to plaintiffs' claim of lack of due process, the court found that the notice given them of the charges adequately satisfied constitutional due process requirements. As to plaintiffs' first amendment claims, the court found that the examiner's conclusion that required plaintiffs to speak out during discussion of job actions violated their first amendment rights. It did not, however, reinstate plaintiffs. Sheller was no longer a National Guard member, and Johnson resigned from the ANG and joined the Pennsylvania Air National Guard. The district court held that, in order to comply with 32 U.S.C. § 709(b) requiring that technicians also serve as members of the National Guard, a technician must concurrently perform civilian and military duties in the same National Guard unit. Thus, the denial of reinstatement constituted a denial of the request for injunctive relief. The grant of plaintiffs' motion for summary judgment under the Administrative Procedure Act in effect granted their request for a declaratory judgment that the defendants had unlawfully terminated plaintiffs' employment.

## II.

The parties raise three issues on appeal. First, plaintiffs argue that the ANG denied them due process because it did not provide them with notice of the statutory provisions they had allegedly violated. Second, the Secretary argues that the district court erred when it granted plaintiffs' motion for summary judgment under the APA. Finally, plaintiff Johnson asserts that the district court should have reinstated him to his technician's position. We consider each of these contentions in turn.

## A.

Plaintiffs Johnson and Sheller contend that the ANG notice of the pretermination hearing was constitutionally inadequate because it failed to notify them of the precise statutory provisions they had allegedly violated. The letter of Colonel Murphy, notifying plaintiffs of their proposed termination stated that it was "based upon your conducting an unauthorized meeting of technicians on government time and advocating a slowdown of work and disruption of the 108 TFW Mission." The letter further detailed the factual basis underlying these allegations. Plaintiffs contend that this did not satisfy constitutional requirements of adequate pretermination notice.

Notice must be adequate "to apprise interested parties of the pendency of the action and afford them an opportunity to present their objection." *Mullane v. Central Hanover Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950). This court recently explained that "[t]he right to a hearing is certainly of little value without prior notice of the charges presented, in sufficient detail fairly to enable the party charged to demonstrate any error that might exist." *Cohen v. City of Philadelphia*, 736 F.2d 81, 84 (3d Cir.1984) (quoting *Goss v. Lopez*, 419 U.S. 565, 579, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975); *Mullane*, 339 U.S. at 314, 70 S.Ct. at 657), *cert. denied*, — U.S. ——, 105 S.Ct. 434, 83 L.Ed.2d 360 (1984). *See also Memphis Light & Water Division v. Craft*, 436 U.S. 1, 14, 98 S.Ct. 1554, 1562, 56 L.Ed.2d 30 (1978) (purpose of due process is to permit the affected individual to prepare adequately for impending hearing).

In this case, the district court found that Colonel Murphy's letter to the plaintiffs gave adequate notice because it "listed both the alleged facts upon which the defendants were relying and the reasons those facts were felt to be offensive." The plaintiffs' additional complaint, that the

Murphy letter misled them because it notified them only that they had advocated illegal acts whereas specification two of the formal charges also alleged that they condoned the advocacy, is of little significance. The factual predicate for the notice and for the charge as recast is the same and the slight variation between the two charges in specification two could not have prejudicially affected the preparation of the defense. Furthermore, the ANG argues that the examiner recast this specification at the request of plaintiffs' counsel. The Murphy notice for the ANG and plaintiffs' responses (Admin.Record pp. 11–16, 46–48) disclose that plaintiffs thoroughly understood the nature of the charges and they were able adequately to prepare their defense. They knew that their role in the technicians' discussions relative to the shift change was the essence of the charges. Moreover, had insufficient notice hampered plaintiffs' preparation, they could have moved at the hearing for a continuance. They did not. Their failure to protest at the hearing strongly indicates that the notice was adequate and they were satisfied with it. The district court properly rejected this contention of the plaintiffs.

### B.

The Secretary of the Air Force, in his cross-appeal, argues that the district court erred in granting summary judgment for plaintiffs on their APA claim. The district court granted the summary judgment motion because, it concluded, substantial evidence did not exist to support the hearing examiner's decision. The Administrative Procedure Act requires the reviewing court to set aside those agency actions, findings, and conclusions that are arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law, 5 U.S.C. § 706(2)(A), contrary to constitutional

right, 5 U.S.C. § 706(2)(B), in excess of statutory discretion, 5 U.S.C. § 706(2)(C), or unsupported by substantial evidence, 5 U.S.C. § 706(2)(E). *See also Neal v. Secretary of the Navy*, 639 F.2d 1029, 1036–37 (3d Cir.1981) (the court has power and duty under APA to review actions of Enlisted Performance Board and Board for Correction of Naval Records). Our task is to determine whether the district court erred in its review.

The hearing examiner found against plaintiffs on two grounds. He found that they had violated 5 U.S.C. § 7131 by conducting "Union business on Official Time" and violated 5 U.S.C. § 7116 by condoning the advocacy of a work slowdown. 5 U.S.C. § 7131(b) provides that activities relating to the internal business of a labor organization shall be performed while the employee is on "nonduty" status. The examiner found that plaintiffs violated 5 U.S.C. § 7131 by conducting union business while employees were on duty status. The district court rejected the examiner's finding that the plaintiffs were on duty status during the shift discussions by the technicians. The court concluded that substantial evidence did not support this finding.

In reaching its conclusion, the court apparently assumed that, because virtually all of the employees were on "break" during the meeting, they were on "non-duty" time. The defendants persuasively argue that the district court's assumption is incorrect; breaks are in fact "duty" time, both in practice and under the Guard's regulations. The district court took no additional evidence and relied on the administrative record in arriving at its legal conclusion that the plaintiffs were not on duty status during the break. This is a legal question and the scope of our review is plenary.[3]

---

**3.** Plaintiffs contend that we should not review this issue because the defendants raise it for the first time on appeal. The record is not clear in this respect. It seems, however, that the assumption that breaks are duty time formed an essential link in the examiner's chain of logic. Without it, he could not reasonably have

reached the issue he discussed—whether the assembly of the technicians constituted a union meeting and therefore a violation. Thus, it is arguable that the defendants prevailed on this point before the examiner and, without argument, lost it before the district court. We therefore deem it appropriate for review.

■ The National Guard Bureau's Technician Personnel Manual, TPM 600/610, at 1–4, provides in pertinent part:

1–4. ESTABLISHMENT OF WORK SCHEDULES

d. (ADDED). Rest periods. Short rest periods during the daily tour may be permitted when such periods are beneficial and/or necessary.

. . . . .

(2) *Rest periods granted in accordance with these provisions are considered duty time and are included in the daily tour of duty.* Rest periods other than those provided herein may not be considered a part of the daily tour of duty; such periods must be charged to the appropriate type of leave. (Emphasis added.)

"Duty" time, under the regulations includes regular break time, unless the breaks are unusual and are charged to leave time. We therefore conclude that the meetings of the technicians to discuss the change in their shift schedule occurred on duty time. The district court erred in concluding otherwise.

Our conclusion that the plaintiffs were on duty time, however, does not end the matter. We must address a critical question that the district court found unnecessary to consider in light of its disposition of the issue of plaintiffs' duty status: were the technicians, including the plaintiffs, conducting internal business of a labor organization at their breaktime meetings? As noted above, 5 U.S.C. § 7131(b) prohibits conducting "internal business of a labor organization" on duty time. Although it did not reach the issue of the nature of the business the technicians were conducting on their breaks, the district court does provide some illumination. In its opinion, it tangentially states: "It would be difficult for the court to conclude that plaintiffs conducted internal union business during the August 26 meeting." The court reasoned that the examples of internal business provided in the statute ("the solicita-

tion of membership, elections of labor officials, and collection of dues," 5 U.S.C. § 7131(b)) "do not characterize the substance of the August 26 meeting." If the substance of the meetings did not involve internal union business, there can be no violation regardless of whether the meeting took place on duty time. Because the district court reached its decision on the basis of its review of the administrative record, which we have before us, we are in as good a position to review it and, in the interest of judicial economy, we will do so.

Section 7131(b) provides as examples of internal union business "the solicitation of membership, election of labor organization officials, and collection of dues...." The legislative history is more specific. The Senate Report that accompanied the Civil Service Reform Act of 1978 discussed the distinction between union activities that "relate to the labor management relationship" and those that relate to "'internal' labor organization business." Examples of the former are "the investigation and attempted informal resolution of employee grievances, participation in formal grievance resolution procedures ... and discussing problems in agreement administration with management officials." S.Rep. No. 969, 95th Cong., 2d Sess. 112–113, *reprinted in* 1978 U.S.Code Cong. & Ad.News 2723, 2835.

Both the language of the statute and the Senate Report support the conclusion that Congress used the phrase "internal business of a labor organization" in section 7131(b) advisedly. It recognized the distinction between matters that form the ordinary grist for grievances between employees and management—hours, pay, and conditions of employment—and matters that concern the relationship between union members and union organizations. The former could be expected to be the subject of conversation and discussion in the workplace and were not excluded by section 7131(b). Matters, however, involving "internal union business," such as the collec-

tion of union dues, the solicitation of union members, and union election campaigning, had no place in the workshop and were barred by section 7131(b).

An examination of the record reveals that at the break meeting the technicians, including plaintiffs, discussed no internal union business. They conducted no internal union business. They merely discussed their concern and objections to the change in the shift schedule without the requisite contractual notice and their potential grievance arising out of the change. In fact, the plaintiffs contended at the hearing that their gathering failed to satisfy the basic criteria for a union meeting because they posted no notice of the meeting and non-union members of the bargaining unit attended.

■ The examiner found "that the subject matter discussed ... principally centered around the discontent of several employees with a change in the work week and the night shift arrangement." This was a matter which, under the language of the statute and the lumination of the Senate Report, did not constitute *internal* union business. It amounted to nothing more than an ordinary work condition grievance arising out of what the technicians considered to be a management violation of the collective bargaining agreement. The examiner, however, erroneously concluded that these were "matters that are clearly 'Union business.' " [4]

Both the general thrust of the statute and the specific examples of the Senate Report indicate an intent to permit discussions of grievances regarding working conditions. Because such discussions form a substantial segment of a union's activities, it is likely that had Congress intended to preclude such activities, it would have so indicated in the Committee report or in the statute itself. Instead, Congress carefully circumscribed the activities to be forbidden as "internal." Because the discussions of the Union members at the evening meetings fall outside the scope of section 7131(b), we find no merit in the Secretary's contention that the district court erred in reversing the hearing examiner. Accordingly, we hold that a meeting of National Guard technicians for the purpose of discussing a potential working condition grievance does not constitute the transaction of "internal union business" within the meaning of section 7131(b).

The hearing examiner also held that plaintiffs violated 5 U.S.C. § 7116 [5] by condoning the advocacy of possible job actions designed to disrupt or slow down the activities of the Tactical Wing. The district court disagreed with the examiner, stating that section 7116 applies to unions as entities, not to individual union members. The defendants argue on appeal, as they did in the district court, that the court should review the reasoning of the agency official who made the final decision regarding dismissal, not the reasoning of the examiner. They assert that the Adjutant General may not have relied on this erroneous ground offered by the examiner. Instead, he may have discharged plaintiffs for actually advocating job disruption in violation of 18 U.S.C. § 1918(3) [6] and 5 U.S.C. § 7116(b)(7).

---

4. The examiner also concluded that the meeting conducted on August 26 "was, in fact, a Union meeting, called by officials of the Union to conduct Union business." We need not decide whether it was a union meeting in light of the holding we reach.

5. 5 U.S.C. § 7116(b)(7) makes it an unfair labor practice for a labor organization
 (A) to call, or participate in, a strike, work stoppage, or slowdown ... or
 (B) to condone any activity described in subparagraph (A) of this paragraph by failing to

take action to prevent or stop such activity....

6. 18 U.S.C. § 1918(3) (1982) provides in pertinent part that whoever violates 5 U.S.C. § 7311 may not hold a position in the Government of the United States if he
 (3) participates in a strike, or asserts the right to strike, against the Government of the United States....
5 U.S.C. § 7311 contains essentially the same language as 18 U.S.C. § 1918.

■ The district court effectively disposed of this argument, an argument that is precluded by the National Guard regulations. The National Guard Bureau Technical Personnel Manual 700 dictates the Adjutant General's scope of review. In cases where a technician has requested a hearing, Regulation 700 5–9(b) provides the Adjutant General with only two options: (1) to consider the examiner's recommendations and render his decision on appeal, Reg. 700 5–9(b)(2), or (2) to take a less severe action than recommended, Reg. 700 5–9(b)(3). Regulation 700 5–9(c) further states that if the Adjutant General disagrees with the examiner's findings and recommendations, the Adjutant General must include the basis of that disagreement in his decision. Because Adjutant General Menard accepted the examiner's recommendation and his decision stated no disagreement, this court must agree with the district court that General Menard adopted the reasoning of the examiner. Therefore, we must affirm the district court's disposition under section 7116.

■ Accordingly, we will affirm the district court in entering summary judgment for the plaintiffs, although we do so for reasons somewhat different than those enunciated by the district court.[7]

### C.

■ The district court's grant of summary judgment for plaintiffs under the Administrative Procedure Act vacates their discharge and entitles them to reinstatement, provided they continue to meet all of the requirements for their position as technicians. Plaintiff Sheller, however, has resigned from the National Guard and thus clearly does not meet all of the requirements for reinstatement; he is no longer a military member of a National Guard unit. Plaintiff Johnson has, in the meantime, transferred his military service to the Pennsylvania Air National Guard where he now serves. The district court denied Johnson's motion for reinstatement on the grounds that his membership in the Pennsylvania Guard does not satisfy the requirement of 32 U.S.C. §§ 702(b) and 709(e)(1). Johnson argues on appeal that he does meet this requirement.

The issue arises because the statute that requires a civilian technician also to serve as a military guard member does not specify to which military unit a technician must belong. 32 U.S.C. § 709(b) provides: "Except as prescribed by the Secretary concerned, a technician ... shall, while so employed, be a member of the National Guard...." Section 709(e)(1) provides that "a technician who is employed in a position in which National Guard membership is required as a condition of employment and who is separated from the National Guard ... shall be promptly separated from his technician employment by the adjutant general of the jurisdiction concerned."

Johnson argues that the statute does not require that the technician perform his military and civilian service in the same unit. He suggest that the legislative history indicates at most that his military position should be "compatible" with his civilian technician position, "not necessarily in the same unit." The legislative history states:

> The concept of the full-time civilian technician program is that his civilian work will be performed in the same unit in which he holds a mobilization assignment. In other words, the technician would perform his civilian work, his training duty, and be mobilized to active duty in the same unit.
>
> While the foregoing is the general practice the committee did learn in some instances technicians hold military assignments in units different from the units in which they are employed. It is the view

---

7. An appellate court may affirm a result reached by the district court on reasons that differ so long as the record supports the judgment. *Guthrie v. Lady Jane Collieries, Inc.,* 722 F.2d 1141, 1145 n. 1 (3d Cir.1983); *Behring International, Inc. v. Imperial Iranian Air Force,* 699 F.2d 657, 666 n. 7 (3d Cir.1983).

of the committee, therefore, that technicians who are required to be military members of the National Guard should occupy a military position which is compatible with their civilian technician position. The Department of Defense has indicated its formal concurrence with this view.

S.Rep. No. 1446, 90th Cong., 2d Sess. 20 (1968).

Johnson argues that the court should read "compatible" broadly enough to encompass his military service in the Pennsylvania National Guard and civilian employment by the New Jersey Guard. Johnson's interpretation is contrary to the legislative history. 32 U.S.C. § 104(a) indicates that the term "unit," used in the Senate Report, refers to lesser divisions of a single state's National Guard. 32 U.S.C. § 104(a) states that "[e]ach State ... may fix the location of the units ... of its National Guard."

The Senate report further states:

The concept of the technician program is that the technicians will serve concurrently in three different ways: (a) Perform full-time civilian work in their units; (b) perform military training and duty in their units; and (c) be available to enter active Federal service at any time their units are called.

S.Rep. No. 1446, 90th Cong., 2d Sess. 2 (1968). The district court, however, read the term "unit" in the Senate Report as referring to lesser divisions "of a single state's National Guard." It was persuaded that a technician whose military assignment is in one state would not be able to obtain immediate mobilization if his civilian employment status were in another state. Therefore, the court concluded that Johnson's Pennsylvania National Guard service is incompatible with his civilian employment.[8]

The regulatory interpretation of the statute further bolsters the district court's con-

clusion. Technician Personnel Regulation 302.7–9 states

A National Guard technician must be assigned to an appropriate military unit ... *in the State where his technician job is located* (see 32 U.S.C. 709(b)). The concept of the National Guard technician program is that technicians will be militarily assigned to the same unit in which his technician job is located. In other words, a technician will perform his technician duties, his military training duties, and be mobilized to active duty in the *same unit.* (Emphasis added.)

*Quoted in Martelon v. Temple,* 747 F.2d 1348, 1351 (10th Cir.1984). The court in *Martelon* addressed this issue and concluded that a technician must be a member of a "military unit from which [his] civilian duties can be performed." *Id.* at 1353.

The district court's conclusion is consistent with the Technicians Act and its legislative history. We therefore must affirm its denial of Johnson's motion for reinstatement.

### III.

Accordingly, summary judgment for the plaintiffs under the Administrative Procedure Act and the order of the district court denying plaintiffs' motion for reinstatement will be affirmed.

Costs taxed against the Secretary of the Air Force.

---

**8.** The district court has, however, by order dated March 16, 1983, transferred Johnson's claim

for back pay to the United States Court of Claims.