897 F.2d 128
 133 L.R.R.M. (BNA) 3100, 15 Fed.R.Serv.3d 1335
 Roy A. JOHNSON and John J. Sheller, Plaintiffs-Appellants,
v.
Verne ORR, Secretary of the Air Force, Francis Erard, Major
General, Wilfred C. Menard, Jr., Major General, Colonel John
Murphy, Brigadier General Charles Young, Air Commander Lt.
Colonel Billy McDaniels, Defendants-Appellees.
 No. 89-5315.
 United States Court of Appeals,
Third Circuit.
 Argued Oct. 20, 1989.
Decided March 1, 1990.
 
 Martin R. Cohen (argued), American Federation of Government Employees, Philadelphia, Pa., Mark D. Roth, American Federation of Government Employees, AFL-CIO, Washington, D.C., for plaintiffs-appellants.
 Bette E. Uhrmacher (argued), Asst. U.S. Atty., Trenton, N.J., for defendants-appellees.
 Before BECKER, COWEN, and SEITZ, Circuit Judges.
 SEITZ, Circuit Judge.
 
 
 1
 This is the decision on defendants' motion to dismiss plaintiffs' appeal from a district court order granting plaintiffs allegedly inadequate attorneys' fees on the ground that the notice of appeal is untimely. The extensive history of this case is recounted in two earlier opinions of this court. Johnson v. Orr, 780 F.2d 386 (3d Cir.), cert. denied, 479 U.S. 828, 107 S.Ct. 107, 93 L.Ed.2d 56 (1986); Johnson v. Orr, 776 F.2d 75 (3d Cir.1985). We will repeat only those facts necessary to an understanding of the issues raised by defendants' motion.
 
 
 2
 Plaintiffs Roy A. Johnson and John J. Sheller ("plaintiffs") were civilian technicians employed by the New Jersey Air National Guard. They were discharged from their positions for labor activities alleged to be in violation of federal law. In an administrative hearing, the dismissals were upheld by an Air National Guard hearing examiner, whose findings were in turn adopted by the New Jersey Adjutant General.
 
 
 3
 Thereafter, plaintiffs filed a complaint in the district court containing three claims: 1) improper discharge in violation of the first and fifth amendments to the United States Constitution, the Bivens claims 2) improper discharge in violation of the provisions of the Administrative Procedure Act (APA) and 3) other constitutional violations remediable under 42 U.S.C. Sec. 1983 (1982).
 
 
 4
 The district court dismissed the first of these claims, the Bivens claims, in December of 1983. On July 2, 1984, the district court granted summary judgment for plaintiffs on their APA claim. The so-called Sec. 1983 claim remained undecided. Defendants moved to have the order granting summary judgment on the APA claim made final pursuant to Federal Rule of Civil Procedure 54(b). This the district court did by order dated October 24, 1985. The defendants then appealed the summary judgment on the APA claim and that judgment was affirmed by this court. Johnson v. Orr, 776 F.2d 75 (3d Cir.1985).
 
 
 5
 After the judgment on the APA claim became final in December 1986, plaintiffs renewed their motion in the district court for costs and attorneys' fees on that judgment.[1] Upon receipt of the Report and Recommendation of the United States Magistrate, the district court entered an order awarding plaintiffs certain fees and costs, pursuant to the Equal Access to Justice Act, 28 U.S.C. Sec. 2412 (1982 & Supp.1987). The order was docketed on April 11, 1988. At this point in time, April 11, 1988, plaintiffs' Sec. 1983 claim remained viable in the district court.
 
 
 6
 We come next to the critical events relevant to the disposition of the pending motion to dismiss. The plaintiffs did not file a notice of appeal within sixty days after the April 11, 1988, fee order was docketed. See Fed.R.Civ.P. 4 (where government is a party notice of appeal must be filed within sixty days). Rather, after negotiation, the parties settled the Sec. 1983 claim and the court entered an order dated April 3, 1989, dismissing the amended complaint with prejudice. On April 10, 1989, plaintiffs filed a notice of appeal from the district court's fee order that had been docketed April 11, 1988. It is the timeliness of this notice of appeal that we must determine.
 
 
 7
 The issue is more simply stated than resolved. The district court's judgment for plaintiffs on the APA claim had been appealed and had become final in December 1986. The order fixing the fees and costs with respect to that judgment was docketed on April 11, 1988. Since the fees and costs were based solely on a final judgment, we must decide whether the order fixing such fees and costs likewise became final and thus triggered the running of the time for appeal.
 
 
 8
 Defendants contend quite simply that the fee order was a final judgment for appeal purposes. Plaintiffs counter that the fact that a final judgment existed with respect to the APA claim, did not render the subsequent fee order final because the Sec. 1983 claim remained outstanding.
 
 
 9
 Generally speaking, an order unconditionally fixing fees, docketed after the docketing of the final merits judgment, is a separate final judgment, at least where the merits judgment resolved all of the claims before the district court. Such a conclusion is implicit in some of the Supreme Court's analysis in White v. New Hampshire Dep't of Employment Security, 455 U.S. 445, 102 S.Ct. 1162, 71 L.Ed.2d 325 (1982). Indeed, this proposition seems not to be challenged here. Plaintiffs say the rule is otherwise, however, where other claims remain unresolved and there is no 54(b) certification of the fee order.
 
 
 10
 An analysis of our problem must begin with a recital of certain federal law relating to 54(b) final judgments. Generally speaking, a judgment entered pursuant to Rule 54(b) has the same finality as any other judgment. See, e.g., Hayes v. Sealtest Foods Div. of Nat'l Dairy Prods. Corp., 396 F.2d 448 (3d Cir.1968) (recognizing that after a Rule 54(b) certification and the entry of a final judgment, the time for appeal begins to run); Government of Virgin Islands v. 2.6912 Acres of Land, 396 F.2d 3 (3d Cir.1968) (finding that failure to certify judgment under Rule 54(b) precludes res judicata effect); Hooks v. Washington Sheraton Corp., 642 F.2d 614 (D.C.Cir.1980) (stating that after Rule 54(b) order, judgment begins to accumulate interest); Redding & Co. v. Russwine Constr. Corp., 417 F.2d 721 (D.C.Cir.1969) (stating that Rule 54(b) has implications as to a judgment's finality for purposes of execution).
 
 
 11
 Thus, certification of a judgment under Rule 54(b) triggers, subject to review, all of the direct consequences of any final judgment. While plaintiffs would, of course, agree that the district court was authorized to fix attorneys' fees, they insist that the fee order, unlike the merits judgment, was not a final judgment when entered because of the existence of the Sec. 1983 claim. Such a result would follow in the absence of a certification of the merits judgment where claims remained undecided. But does plaintiffs' position clash with the basic purpose behind the adoption of the Rule 54(b) provision permitting a district court to render a judgment final while other claims remain pending?
 
 
 12
 The factors that motivated the adoption of the certification provision in Rule 54(b) are clear:
 
 
 13
 Rule 54(b) is designed to facilitate the entry of judgments upon one or more but fewer than all the claims or as to one or more but fewer than all the parties in an action involving more than one claim or party. It was adopted because of the potential scope and complexity of civil actions under the federal rules, given their extensive provisions for the liberal joinder of claims and parties. The basic purpose of Rule 54(b) is to avoid the possible injustice of a delay in entering judgment on a distinctly separate claim or as to fewer than all of the parties until the final adjudication of the entire case by making an immediate appeal available. [footnote omitted]
 
 
 14
 10 C. Wright, A. Miller & M. Kane, Federal Practice and Procedure, Sec. 2654 (2d ed.1983).
 
 
 15
 Attorneys' fees are, of course, collateral to the main cause of action. White, 455 U.S. 445 at p. 451, 102 S.Ct. 1162 at p. 1166. However, when the judgment on the fees is rendered after the entry of final judgment on the merits pursuant to Rule 54(b), is there any policy reason why the court's decision to render the merits judgment final should not carry over to the fee determination thereon solely because of the existence of another claim?
 
 
 16
 If plaintiffs are correct, the fee order of the district court docketed on April 11, 1988, lacked finality and thus could not have been appealed at that time by either side without a certification. Such a result could materially delay the finality of a frequently not unimportant aspect of a favorable judgment on the merits--attorneys' fees. Moreover, since a 54(b) certification indicates that the district court believes the merits judgment should become final immediately, we can think of no policy consideration that would suggest that a separate fee award on that judgment should not also be final. This is even more true when, as here, the certified merits judgment has already been affirmed on appeal. Assuredly, the very purpose served by a certification of finality suggests the importance of making final all of its collateral consequences.
 
 
 17
 Plaintiffs contend that the legal fees award was not appealable because there was no express Rule 54(b) determination as to the fees and costs claims. The contention implies that such an express determination of finality was necessary. Of course, the certification would only be necessary if the attorneys' fee order were to be viewed as not being a final judgment. Our determination to the contrary negates this argument.
 
 
 18
 Plaintiffs assert that this court's decision in Yakowicz v. Commonwealth of Pennsylvania, 683 F.2d 778 (3d Cir.1982), requires us to find this fee order unappealable until the entire complaint was dismissed. However, that case is not controlling. Yakowicz ruled that an order denying interim attorneys' fees was not final and appealable. Here, in contrast, the final assessment of fees was based on a final judgment.
 
 
 19
 Finally, plaintiffs rely on certain actions of the parties to suggest that they understood the fee order of April 11, 1988, not to be a final judgment. Finality of a judgment for appeal purposes presents a jurisdictional issue for our determination. As a consequence, plaintiffs' understanding as to the finality of the order is irrelevant.
 
 
 20
 We conclude that the fee order of April 11, 1988, was itself a final judgment under the circumstances. We will therefore grant defendants' motion to dismiss plaintiffs' appeal as untimely.
 
 
 21
 BECKER, Circuit Judge, concurring.
 
 
 22
 Although I join in the court's opinion, I find this case far more difficult than its tone would suggest. To hold final an award of counsel fees after a partial merits judgment itself certified as final under Fed.R.Civ.P. 54(b), as we do, is to presuppose that an appropriate fee can and should be determined at that time. I find this assumption somewhat problematic, and indeed in some tension with the Supreme Court's prescribed method for determining an appropriate counsel fee award. I write separately to identify how today's result will complicate the counsel fee analysis and to explain why I believe that we reach the right result nonetheless.
 
 I.
 
 23
 In Hensley v. Eckerhart, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), the Supreme Court established the basic methodology for calculating an appropriate award of statutory attorneys' fees. "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate," id. at 433, 103 S.Ct. at 1939--the so-called "lodestar" amount. However, hours spent litigating unsuccessful claims unrelated to the ones on which the plaintiff has prevailed must then be identified and excluded from the lodestar. See id. at 434-35, 103 S.Ct. at 1939-40. If, on the other hand, the unsuccessful claims are sufficiently interrelated with the successful ones--i.e. they "involve a common core of facts or [are] based on related legal theories," id. at 435, 103 S.Ct. at 1940--courts should not attempt to identify specific hours spent on those claims and to exclude them from the lodestar. "Instead the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." Id.
 
 
 24
 Hensley thus teaches that the requisite comparison between hours expended and relief obtained cannot be done on a claim-by-claim basis for claims that "involve a common core of facts or [are] based on related legal theories." Thus, a plaintiff who prevailed on only one of several interrelated claims and won essentially complete relief should receive a fee award equal to the lodestar amount, while a plaintiff who prevailed on all of his claims but won only limited or partial relief might appropriately receive less than the full lodestar amount. In either case, "the most critical factor [in setting an appropriate fee] is the degree of success obtained" in the litigation as a whole. Id. at 436, 103 S.Ct. at 1941.
 
 
 25
 Claims can be sufficiently interrelated to require joint consideration for Hensley purposes but sufficiently discrete to be severable from one another on the merits under Rule 54(b) for purposes of appellate jurisdiction. The "common core of facts" or "based on related legal theories" test set out in Hensley suggests a very broad standard of relatedness similar to the one generally used for purposes of claim preclusion.[1] The Supreme Court, however, has held that some transactionally related claims are sufficiently discrete to be severable from one another under Rule 54(b). See Cold Metal Process Co. v. United Engineering & Foundry Co., 351 U.S. 445, 452, 76 S.Ct. 904, 909, 100 L.Ed. 1311 (1956) ("If the District Court certifies a final order on a claim which arises out of the same transaction and occurrence as pending claims, and the Court of Appeals is satisfied that there has been no abuse of discretion, the order is appealable."); Sears, Roebuck & Co. v. Mackey, 351 U.S. 427, 436-37 & n. 9, 76 S.Ct. 895, 900-01 & n. 9, 100 L.Ed. 1297 (1956) (upholding the certification of a claim that involved "some" different operative facts from those involved in claims that remained pending). I conclude, therefore, that some claims that "involve a common core of facts or [are] based on related legal theories," Hensley, 461 U.S. at 435, 103 S.Ct. at 1940, can be severed from one another under Rule 54(b) nonetheless.
 
 
 26
 Thus, a situation can arise in which a plaintiff has prevailed on one claim, another transactionally related claim remains pending, and the district court has certified the adjudicated claim as final under Rule 54(b).[2] At that point in the litigation, it seems to me that the analysis required by Hensley cannot be done properly. Because the adjudicated claim is interrelated with the pending one, the hours reasonably spent litigating both must be included in the lodestar. However, because the plaintiff's overall degree of success is as yet unknown (because of the uncertain outcome of the related claim that remains pending), the district court cannot make the requisite comparison between the hours expended and the overall relief obtained. In short, an unmodified Hensley analysis is impossible.
 
 
 27
 Hensley, however, can easily be modified to make the requisite calculation possible. At the time of the Rule 54(b) certification, the Hensley analysis can be performed on the assumption that the plaintiff will obtain no relief on the claim that still remains pending. Then, the "overall relief obtained" for purposes of the fee determination is simply the relief obtained from having prevailed on the certified claim. That relief can be compared against the total number of hours spent litigating both claims until the time of the certification, and an appropriate fee set accordingly.
 
 
 28
 If the pending claim also provides for statutory attorneys' fees and the plaintiff later prevails on it as well, another calculation under Hensley would then be warranted. The effect of the Rule 54(b) certification, I believe, is to sever the previously related claims, both for appellate jurisdiction and for Hensley purposes. Before the certification, "[m]uch of counsel's time [was] devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis." Hensley, 461 U.S. at 435, 103 S.Ct. at 1940. After the certification, however, counsel's time is easily allocable between the two claims: obviously, time spent litigating in the district court is attributable only to the claim still pending. Thus, a Hensley calculation can be made at this second stage by comparing all potentially compensable hours--which include all time spent litigating the pending claim after the certification and all time spent litigating before the certification (which is fairly attributable to both claims) that went uncompensated under the first Hensley calculation--against the degree of additional success afforded by the later judgment (or settlement).
 
 II.
 
 29
 The exact mechanics of all the various permutations of this bifurcated Hensley analysis are not before us at this time. Nonetheless, the result we endorse today makes sense only to the extent that the bifurcated Hensley analysis that it will necessitate is feasible. Feasible it is, although even this brief outline of the analysis reveals its principal vices: (1) it further complicates an already overly complicated field of law, measured against the alternative of requiring a unitary fee determination to be made only after all related claims have been fully adjudicated; (2) it requires some interstitial modification of the procedures set out in Hensley, a binding Supreme Court precedent; and (3) it allows piecemeal appeals of related merits judgments to be followed by piecemeal appeals of related counsel fee awards.
 
 
 30
 For these reasons, I am uncomfortable with the statement that there is "no policy consideration that would suggest that a separate fee award on [the certified merits] judgment should not also be final." Ante at 131. Nonetheless, I join in the court's opinion. I do so, despite these misgivings, because I believe that the adverse consequences of postponing finality are sufficiently weighty to overcome the complications of bifurcating the counsel fee determination.
 
 
 31
 First of all, requiring a unitary fee determination only at the end of the litigation of all related claims would make the Hensley analysis simpler as a formal matter, but often more difficult practically. Frequently claims are litigated over a number of years, and a pending claim can drag on for several years after a related claim has been decided and certified. Memories (unlike pending claims) fade with time, so a district court is surely in a better position to set an appropriate fee relatively contemporaneously, even after accounting for the technical complications engendered by the bifurcation of the Hensley analysis.
 
 
 32
 Second, a prime policy underlying the various statutory fee provisions is to encourage competent attorneys to file classes of suits that Congress has deemed to be in the public interest. See, e.g., City of Riverside v. Rivera, 477 U.S. 561, 575-81, 106 S.Ct. 2686, 2692-98, 91 L.Ed.2d 466 (1986) (plurality opinion) (discussing the rationale behind 42 U.S.C. Sec. 1988). To the extent that the calculation of a counsel fee award is postponed, the attorney must wait that much longer to receive his compensation. Money has a time value, and attorneys often have cash flow considerations to worry about. For these reasons, an award delayed is an award reduced--and with it, the incentive to bring similar suits in the future. At the margin, therefore, delaying the fee calculation will result in fewer actions, thus undermining the purpose underlying the relevant statutory fee provision.
 
 
 33
 Although for me the question is close, I conclude that on balance the benefits of the rule we announce today outweigh its drawbacks. I understand nothing in the court's analysis to be inconsistent with the views I have expressed and, on that assumption, I join in the court's opinion.
 
 
 
 [1]
 The earlier motion was not acted on at the time of the certification of the judgment on the APA claim
 
 
 [1]
 Compare, e.g., Fed.R.Civ.P. 13(a) (counterclaim must be raised "if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim"); Restatement (Second) of Judgments Sec. 24 & comments a, b (1982) (equating "claim" with "transaction" and defining "transaction" in terms of "a natural grouping or common nucleus of operative facts")
 
 
 [2]
 Indeed such a situation arose earlier in this litigation: the plaintiffs prevailed on their APA claim; the Sec. 1983 claim, which arose out of a common core of operative facts as the APA claim, remained pending; and the district court certified the APA claim as final nonetheless