Terry D. POSTON, et al., Plaintiffs,

v.

Beech N. FOX, et al., Defendants.

Civ. Nos. 80–1459, 80–1939 and 81–1082.

United States District Court,
D. New Jersey.

Jan. 12, 1984.

Robert P. Beakley, Atlantic City, N.J., for plaintiffs.

Frank P. Addas, James & Addas, Jersey City, N.J., for defendants in their respective capacities.

James S. Webb, Jr., Webb & Harriman, Wildwood, N.J., for defendants in their individual capacities.

Irwin I. Kimmelman, Atty. Gen. of New Jersey by Joseph T. Maloney, Deputy Atty. Gen., Trenton, N.J., for New Jersey Com'r of Corrections.

BROTMAN, District Judge.

This is a motion for attorney's fees and costs brought by plaintiffs' attorney, Robert P. Beakley, Esquire, pursuant to 42 U.S.C. § 1988. The lawsuit was initiated by prisoners in the Cape May County Jail and it was asserted against the Warden Beech N. Fox and other prison officials. Plaintiffs were challenging the constitutionality of their conditions of confinement. 28 U.S.C. §§ 2201 and 2202; 42 U.S.C. § 1983. Beakley was appointed counsel on behalf of plaintiffs on October 16, 1980, by the Honorable John F. Gerry. Beakley represented plaintiffs throughout the litigation and was instrumental in the settlement process which culminated in a consent decree read into the record on December 6, 1982, and filed January 20, 1983.

Plaintiffs now come before this court pursuant to the Civil Rights Attorney's Fees Award Act of 1976. 42 U.S.C. § 1988. The statute reads in pertinent part:

> In any action or proceeding to enforce a provision of section ... 1983 ... of the Civil Rights Act of 1964, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

The calculation of attorney's fees in the Third Circuit is governed by the standards set forth in *Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp.*, 487 F.2d 161 (3rd Cir.1973) (*Lindy I*); *Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp.*, 540 F.2d 102 (3rd Cir.1976) (*Lindy II*) and their progeny. *See also Hensley v. Eckerhart*, — U.S. —, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983); *Walker v. Robbins Hose Co. No. 1, Inc.*, 622 F.2d 692 (3rd Cir.1980); *Prandini v. National Tea Co.*, 557 F.2d 1015 (3rd Cir.1977) (*Prandini I*); *Prandini v. National Tea Co.*, 585 F.2d 47 (3rd Cir.1978) (*Prandini II*). According to the analysis employed in those cases, "a fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and the hourly rates." *Hensley, supra* 103 S.Ct. at 1941.

■ A court must first calculate the lodestar, a figure initially determined by multiplying the hours of service by the hourly rate: The court may then adjust that number by accounting for various contingency factors such as the difficulty of the case or the quality of counsel's legal performance. *See Lindy II, supra; Hughes v. Repko*, 578 F.2d 483 (3rd Cir.1978).

■ In determining a fee award, the court must consider the relationship between the extent of success and the amount of the fee award. *Hensley, supra* 103 S.Ct. at 1942. The Supreme Court continued in *Hensley*, "A reduced fee award is appropriate if the relief, however significant, is limited in comparison to the scope of the litigation as a whole." *Id.* at 1943. Moreover, a court is permitted to make an adjustment in the fee award if it concludes that the relief obtained was either "exceptional or limited in nature." *Id.* at 1941.

■ When assessing a fee application pursuant to § 1988, a court may still exercise a significant amount of discretion. *Id.* The court in *Lindy II* specifically held that

"discretion is abused only where no reasonable man would take the view adopted by the trial court." *Lindy II, supra* at 115 (*quoting Delno v. Market St. Ry.*, 124 F.2d 965, 967 (9th Cir.1942)). Such discretion must be articulated and fully supported by the record.

## I. Prevailing Party

■ Plaintiffs' attorney contends that his client was a "prevailing party" as defined in § 1988, and therefore he is entitled to attorney's fees for time spent litigating the case. The Supreme Court recently noted that

[a] typical formulation is that "plaintiffs may be considered 'prevailing parties' for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." [citation omitted].

*Hensley, supra* 103 S.Ct. at 1939. A plaintiff may be considered a "prevailing party" even after settling the case. *Maher v. Gagne*, 448 U.S. 122, 129, 100 S.Ct. 2570, 2574, 65 L.Ed.2d 653 (1980); *see also* S.Rep. No. 94–1011, 94th Cong., 2d Sess. reprinted in 1976 U.S.Code Cong. & Ad. News 5908, 5912.

■ In the instant case, the court concludes that plaintiffs were the prevailing party. The amended complaint, filed April 29, 1981, alleged that the conditions of the Cape May County Jail ("Jail") violated the constitutionally mandated minimum standards in seventeen (17) areas. These areas included, *inter alia*, the physical conditions of the Jail, admission and in-processing of inmates, health care, discipline, grievance procedures, food and diet, recreation, educational programs, visitation, clothing provided and preferential treatment of inmates. By a stipulation of settlement, filed January 20, 1983, defendants agreed to

take all necessary action in order to obtain compliance with the Manual of Standards for New Jersey Adult County Correctional Facilities established by the New Jersey Commissioner of the Depart-

ment of Corrections pursuant to New Jersey Administrative Procedures Act. Since the Jail will have to change some practices and enforce some of their procedures currently "on the books" but to which they have not adhered, the plaintiffs have achieved some of the benefit sought in bringing this suit. As noted above, the court finds that the plaintiffs were the prevailing party and are entitled to attorney's fees pursuant to 42 U.S.C. § 1988.

## II. *Lodestar Calculation*

### A. *Hours Reasonably Expended*

■ Having found that an award of counsel fees is appropriate, the court now turns to the proper amount of those fees. In calculating the number of hours appropriate for the lodestar, the court's first inquiry is "how many hours were spent *in what manner* by which attorneys." *Ursic v. Bethlehem Mines*, 719 F.2d 670, submitted at 676 (3rd Cir., Oct. 19, 1983) [emphasis in original]. Beakley submitted computer print-outs and time sheets to this court that he asserts shows he and his firm worked on the case for a total of 934 hours, 5 minutes. Affidavits of Beakley, filed 4/19/83; 6/3/83; 11/28/83 and 1/5/84.[1]

The defendants argue that the documentation presented by the plaintiffs is insufficient and that plaintiffs should

> refine the time and activity records to show separately in itemized fashion each activity or work performed, an explanation of same and the time being charged.

Defendants' Brief at 16.

The court finds no merit in defendants' contention. The records, especially the computer print-outs, provide sufficient documentation of the hours worked and the activities performed during those hours. Recognizing the difficulties in the case and the length of time involved, the court accepts Mr. Beakley's affidavits and records in support of his application.

The 934 hours expended by plaintiffs' attorneys may be categorized as follows:

approximately 738 hours were performed by Beakley on the main part of the case, 50 hours were spent by Beakley on the fee application, 26 hours by two of Beakley's former law partners, and 120 hours performed by Beakley's paralegal. Affidavits of Beakley; Report of Defendants' Accountants.

The court must next determine in what manner these hours were spent. *Ursic, supra.* Most of Beakley's time, according to his time sheets, affidavits and brief, were spent communicating with his clients, opposing counsel, experts, and the court, taking depositions, conducting research and preparing submissions to the court.

Defendants argue that Beakley did work that need not have been done by a lawyer. They argue he should have delegated work more efficiently. For example, they point to 55 minutes spent by Beakley on November 23, 1981, arranging for a hotel room for his expert. Defendants' Brief at 7; Dep. of Beakley, 4/1/83, at 102. Regarding the time spent by Beakley's paralegal, Suzanne Pasley, defendants point out that on August 2 and 3, 1982, she spent 7 hours photocopying documents. They argue that this could have been done by a secretary, and did not have to be done by a paralegal.

■ A court has the authority to disallow hours that are performed by individuals who could easily have delegated these tasks to less skilled (and less expensive) individuals. The Third Circuit poetically commented in a recent case:

> Nor do we approve the wasteful use of highly skilled and highly priced talent for matters easily delegable to non-professionals or less experienced associates. Routine tasks, if performed by senior partners in large firms should not be billed at their usual rates. A Michelangelo should not charge Sistine Chapel rates for painting a farmer's barn.

*Ursic, supra* at 677.

It is true that some of the tasks performed by Beakley or Pasley could have

---

1. Defendants' accountants, Capaldi, Schalick & Reynolds, submitted a calculation that shows that as of March 24, 1983, plaintiffs' attorneys actually spent five more hours on the case than they had claimed. The court will nevertheless abide by plaintiffs' representation.

been delegated to less expensive employees, but the court finds that these instances of non-delegation are not frequent enough to mandate reducing the number of hours that will be included in the lodestar. The court also notes that for much of the duration of the litigation, Beakley had only two law partners and that he is now a solo practitioner. With such a small office, it is not always possible to delegate tasks to others. The court accordingly finds that Beakley and his paralegal performed work that was appropriate to their status and experience. The court will not reduce the number of hours worked on this basis for it finds that the hours of work that could have been effectively delegated are *de minimis.*

The court's only adjustment in the number of hours worked will be to eliminate an hour and a half worked by Beakley on December 27 and 28, 1983. This time was spent by Beakley detailing which hours were spent on the fee application itself.

Beakley should have submitted this compilation earlier. Had that been done, it could have been calculated with minimal extra effort.

In summary, the court finds that Beakley and his law partners reasonably spent 763 hours, 30 minutes on legal work in the main case and 48 hours, 50 minutes on the fee application; Beakley's paralegal reasonably spent 120 hours, 15 minutes on legal work.

### B. *The Reasonable Hourly Rate*

■ The second aspect of the lodestar calculation is determining the attorney's proper hourly rate. Counsel in the instant action billed his time at $60 per hour during the "better part of 1980" until "early in 1981." Beakley Dep. *supra* at 5. The court will construe this $60 rate as continuing until the end of April, 1981. This estimation is deemed to be a reasonable dividing line, especially since the time devoted by Beakley to this case increased significantly after April 30, 1981. Since plain-

tiffs' counsel has the burden of proof on this and all other issues, his failure to provide the court with more documentation as to the date when his billing rate increased leaves the court with no choice but to make an educated guess.

Plaintiffs' counsel has billed his time at $75 an hour since approximately May 1, 1981. The paralegal who worked on this matter was billed at $35 an hour throughout the course of this litigation. Beakley Aff. of 6/3/83, ¶ 8. The court finds that these fees are reasonable ones for the area of New Jersey in which counsel practices and will accept them as the starting point for the determination of the reasonable hourly rate.

Beakley requests this court to raise this rate to $125 per hour because of his experience in prisoners' rights litigation and federal class action suits. Beakley Aff. of 4/19/83, ¶ 26. Beakley previously represented the inmates of Atlantic County Jail in a class action before this court. *Ippolito v. Howell,* No. 78–911. Counsel states that because of his previous experience, significant amounts of time were saved in such areas as preparing documents, research, interviewing inmates, and evaluating grievances. *Id.* at ¶ 15.

The court agrees that some upward adjustment in the hourly rate is proper to account for the experience of counsel in handling a class action on behalf of inmates challenging their conditions of confinement. Counsel is undoubtedly somewhat more efficient in handling these matters than inexperienced counsel would be. After carefully considering this factor in the context of this case, the court concludes that it will increase counsel's hourly rate by ten percent (10%) for the lodestar calculation. Counsel's hourly rate will therefore be $66 for hours of work performed before April 30, 1981, and $82.50 for hours of work performed after April 30, 1981.[2]

Counsel does not argue that an hourly rate higher than the usual billing rate of $35 should apply to his paralegal. The

---

**2.** The court discusses the hourly rate for work on the fee application, *infra* at section IV.

court believes there is no reason to adjust her hourly rate upward or downward.

### III. *Adjustments to the Lodestar*

■ The court now turns to whether the attorney's fee should be adjusted upward or downward to account for any other factors. One of the most important factors here was recently outlined by the Supreme Court in *Hensley, supra* 103 S.Ct. at 1942: the relationship between the extent of success and the amount of the fee award. A court may reduce a fee award if it concludes the relief obtained was "limited in nature." *Id.* at 1941. The Third Circuit has likewise held that a court "may reduce the objectively determined fee when the benefit produced does not warrant awarding the full value of the time expended." *Merola v. Atlantic Richfield Co.,* 515 F.2d 165, 168–69 (3rd Cir.1975) (*Merola II*). Judge Rosenn in his concurring opinion in *Hughes v. Repko, supra* at 491, found that a fee may be reduced if the court determines "that the litigation has produced minimum benefits."

Plaintiffs' counsel argues that the stipulation of settlement "obtains virtually all the relief sought by the plaintiffs in their complaints." Beakley Aff. of 4/19/83, ¶ 1. Defendants argue that the recommendations of plaintiffs' expert, John Case, shows that the conditions at the Jail were not in need of such significant improvement that plaintiffs achieved the "full extent of success." Defendants also argue that the relief in this case was substantially different from that relief obtained in *Ippolito v. Howell,* a class action suit in this court challenging conditions at Atlantic County Jail.

The court is intimately familiar with the facts of this case and with the situation at the Jail. The stipulation of settlement resulted in the appointment of a monitor from the New Jersey Department of Corrections and required defendants to ensure the Jail met the standards of the Manual for New Jersey Adult County Correctional Facilities. It is undoubted that the settlement will improve the conditions at the Jail.

Nevertheless, the court must reduce the award of counsel fees because, after carefully reviewing the record in this case, it concludes the benefits of the litigation were not substantial enough to merit the full amount of the lodestar.

The court bases this judgment in part on the reports of *plaintiffs'* experts, John Case and Robert J. Wicks, Psy. D. Case, in his report dated December 24, 1981, states that he toured the Jail on November 24, 1981. Some of Case's comments include the following: "We went through the infirmary which seems to be an excellent area" (at p. 4); "[The library] looks quite adequate as far as I was concerned" (at p. 3); "I found no particular problem with the physical conditions in the jail if the areas are being used properly" (at p. 6); "I was generally impressed with the menu and with the attitude of the cook" (at p. 9). Mr. Case's comments were not uniformly positive and he also recommended numerous changes in the operation of the Jail.

Dr. Wicks, a clinical psychologist, toured the Jail on November 13, 1981. He commented in his report (at p. 1):

> The facility appeared clean and I did not note any extreme tension on the part of either the staff or inmates. However, as a result of my visit I did uncover a number of areas which need to be addressed. If they aren't, the mental health of the inmates is in jeopardy, tension may start to build, and a serious incident may result.

Both Case and Wicks recommended improvements, but their reports and the record in the case as a whole reveal that the conditions of the Jail were not so abysmal and the improvements not so dramatic to merit awarding the full amount of the lodestar, or to adjust the lodestar upward. After careful consideration, the court concludes that it will reduce the legal fees—those of the attorney and paralegal—by 40% of the lodestar calculation.

Counsel for each party seek several other adjustments in the fee award.

First, defendants argue that the fee award should be reduced for work on the unsuccessful claims of plaintiffs. Defendants' Brief at 29. The court finds that it cannot reduce the award for the services on unsuccessful claims. The stipulation of settlement did not exclude from its coverage any of plaintiffs' claims. The experts retained by plaintiffs and defendants differed on the need for improvement on the various claims of plaintiffs. After reviewing the record of the case and the terms of the settlement, the court cannot say that plaintiffs were entirely unsuccessful on any of their claims.

■ Second, plaintiffs argue that the fee award should be adjusted upward to account for the high quality of counsel's work. Plaintiffs' Brief at 14. The court concludes that no adjustment is warranted for this factor. The Third Circuit has commented on this factor in *Ursic, supra* at 674:

An increase based on the quality of work performed rewards counsel for exceptional work in a complex case culminating in an outstanding result.

The court has already adjusted counsel's hourly rate upward by 10% to account for his previous experience in handling these matters. The issues in this case were not so complex, nor the result so outstanding to warrant any further upward adjustment. As in the *Ippolito* case, plaintiffs' counsel has been competent and diligent in handling this case. This conduct, however "represents the level of professional responsibility that this court expects from all members of the bar of this court." *Ippolito v. Howell*, No. 78–911, slip op. at 7 (D.N.J. July 11, 1980).

Third, plaintiffs argue that the fee award should be adjusted upward to account for the contingent nature of success in this case. Beakley Aff. of 4/19/83, ¶ 28. *See Lindy I, supra.* The court cannot agree that a contingency adjustment is appropriate in this case. When Beakley accepted the Hon. John F. Gerry's assignment as counsel, Beakley had just successfully settled the *Ippolito* case and had received an accompanying fee award. The comments of this court in its opinion awarding attorney's fees in *Ippolito, supra* at 7, apply also to the present case:

The increasing likelihood of success of cases challenging prison conditions must also have been apparent to plaintiffs' counsel .... Several of those cases are cited in plaintiffs' brief in support of the application for attorney's fees.

Fourth, plaintiffs argue that the fee should be adjusted upward because of the "undesirability of this type of litigation [and] the fact that suit must be brought against influential public officials in the communities where I live and practice law." Beakley Aff. of 4/19/83, ¶ 27. The court rejects this argument as this would mean almost every class action on behalf of prisoners would require such an adjustment. The case law does not support such an adjustment. Furthermore, Beakley has not identified any potential clients who said they would not retain him as counsel because of his representation of the inmates. Beakley Dep. at 18.

Fifth, plaintiffs argue that the fee award should be increased because the "demands of this type of litigation preclude me from becoming involved in many other matters." Beakley Aff. of 4/19/83, ¶ 27. The court rejects this argument since Beakley has presented no evidence that he turned away business because of his representation of plaintiffs in this suit. Beakley Dep. at 19.

## IV. *Fee Application*

■ The hours spent on the fee application itself need not be adjusted in the same way as the hours spent on the main case. *See Vecchione v. Wohlgemuth*, 481 F.Supp. 776 (E.D.Pa.1979). In *Baughman v. Wilson Freight Forwarding Co.*, 583 F.2d 1208, 1219 (3rd Cir.1978), the Third Circuit held the hours spent on the fee application should not be adjusted for quality or contingency factors. The rationale in *Baughman* for a separate calculation for hours spent on the fee petition is that

such hours are incurred apart from the prosecution of the main case, and it is

upon the nature of the main case and the quality of the work done on it that adjustments to the lodestar are based. *Id.* at 1219. The court believes that the other adjustment factors likewise are not appropriately applied to the hours spent on the fee petition in this case. The 48 hours, 50 minutes spent on the fee petition, which appear to the court to be reasonable, and which defendant does not challenge, will be compensated at counsel's regular billing rate of $75 per hour. The amount awarded for work on the fee petition itself totals $3662.

### V. Costs

Plaintiffs' counsel also requests $7529.53 as reimbursement for out-of-pocket expenses. Defendants do not oppose this award and the court finds these expenses to have been properly documented and reasonable. 28 U.S.C. § 1920. Plaintiffs' costs will be reimbursed in full.

### VI. Conclusion

The court concludes that plaintiffs' counsel reasonably expended 52 hours, 55 minutes on the main case from September 19, 1980, until April 30, 1981. This work will be compensated at the rate of $66 per hour, which is counsel's regular $60 per hour billing rate, increased 10% for his expertise in these matters. Plaintiffs' counsel reasonably expended 710 hours, 35 minutes on the main case from May 1, 1981, until the present time. This work will be compensated at the rate of $82.50 per hour, which is counsel's regular $75 per hour billing rate, increased 10% for his expertise in these matters. Counsel's paralegal reasonably expended 120 hours, 15 minutes on this case. This work will be compensated at the rate of $35 per hour, the regular billing rate. This calculation produces a lodestar of $66,324. The lodestar will be reduced 40% to account for the extent of plaintiffs' success and the results achieved by the litigation. The fee award on the main case will therefore be set at $39,794.

Plaintiffs' counsel reasonably expended 48 hours, 50 minutes on the fee application, which will be compensated at counsel's regular billing rate of $75 per hour. This portion of the fee award will be set at $3662.

Plaintiffs' counsel's out-of-pocket expenses of $7529.53 will be reimbursed in full.