**Captain Tammy S. BLAKEY, Plaintiff,**

**v.**

**CONTINENTAL AIRLINES, INC., a foreign corporation, Defendant.**

Civ. No. 93–2194(WGB).

United States District Court, D. New Jersey.

April 9, 1998.

Law Offices of Linda B. Kenney, Red Bank, NJ by Linda B. Kenney, Gregory S. Schaer, Short Cressman & Burgess, PLLC Seattle, WA by David E. Breskin, for Plaintiff.

Epstein Becker & Green, PC, Newark, NJ by Robert H. Bernstein, Mark D. Lurie, Michael D. Markey, for Defendant.

## OPINION

BASSLER, District Judge.

As a prevailing party, Plaintiff Tammy S. Blakey moves for an award of attorney's fees in the amount of $1,892,552.25 and costs in the amount of $245,310.00, including a requested 50% contingency enhancement. She also requests an award of prejudgment interest as a prevailing party. For the reasons set forth below, the Court awards Plaintiff $764,649.83 in attorney's fees, $210,912.24 in costs and prejudgment interest on the $625,-000 remitted damages award.

## I. BACKGROUND

Plaintiff Tammy S. Blakey ("Blakey") filed suit in 1993 alleging 1) hostile work environment sexual harassment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and the New Jersey Law Against Discrimination ("LAD"), N.J.S.A. 10:5–1 et seq.; 2) disparate treatment sex discrimination in violation of Title VII and LAD; 3) retaliation in violation of Title VII, LAD, and the New Jersey Conscientious Employee Protection Act, N.J.S.A. 34:19–1 et

*seq.* ("CEPA"); 4) defamation; and 5) violation of public policy.

The Court dismissed Blakey's public policy claim on June 16, 1995 and granted summary judgment dismissing her defamation claim on March 9, 1997. The remaining claims were tried for five weeks in September and October 1997. At the close of her case, Blakey voluntarily dismissed her CEPA claim. On October 16, 1997, the jury returned a verdict in favor of Blakey on her sexual harassment claim, but rejected her claims of disparate treatment sex discrimination and retaliation. The Court entered judgment on the jury's verdict of $875,000 on November 5, 1997.[1]

Subsequent to the trial, Continental moved for a new trial on damages, or in the alternative, for remittitur. On January 30, 1998, this Court remitted Blakey's emotional distress damages award to $250,000 and conditionally granted Continental a new trial on damages if Blakey refused to accept the remittitur. On March 3, 1998, the Court denied Blakey's motion for reconsideration of the remittitur. Blakey accepted the remittitur and the Court entered an amended judgment on the remitted verdict of $625,000 on April 2, 1998.

Blakey now moves for an award of attorney's fees in the amount of $1,892,552.25, costs in the amount of $ 245,310.65 and prejudgment interest, pursuant to both 42 U.S.C. § 2000e–5(k) and N.J.S.A. 10:5–27.1. Blakey also seeks a 50% contingency enhancement on the fees and costs for both firms; the figures above reflect this enhancement. Blakey represents her prejudgment attorney's fees and costs through October 31, 1997 as follows:

1. The jury awarded Blakey $480,000 in back pay, $15,000 in front pay, and $500,000 for emotional distress, pain and suffering, but did not award any punitive damages. The jury also found that Blakey had failed to mitigate damages, and subtracted $120,000 from her back pay award of $480,000.

2. In response to Continental's objections, Blakey voluntarily offered to deduct certain fee entries. These voluntary deductions are not reflected in this figure.

LAW OFFICES OF LINDA B. KENNEY:

| | |
|---|---|
| Total Prejudgment Fees: | $ 517,938.00 |
| Total Prejudgment Costs: | $ 11,522.97 |
| Total Prejudgment Fees and Costs: | $ 529,460.97[2] |

SHORT CRESSMAN & BURGESS:

| | |
|---|---|
| Total Prejudgment Fees: | $ 625,013.50 |
| Total Prejudgment Costs: | $ 37,753.16 |
| Total Prejudgment Fees and Costs: | $ 662,766.66 |

Blakey has also submitted her fees and costs for postjudgment work:

LAW OFFICES OF LINDA B. KENNEY:

| | |
|---|---|
| Total Postjudgment Fees: | $ 27,615.00 |
| Total Postjudgment Costs: | $ 1,828.36 |
| Total Postjudgment Fees and Costs: | $ 29,443.36 |

SHORT CRESSMAN & BURGESS:

| | |
|---|---|
| Total Postjudgment Fees: | $ 91,135.00 |
| Total Postjudgment Costs: | $ 14,724.75 |
| Total Postjudgment Fees and Costs: | $105,859.75 |

Blakey asserts she has paid an additional $146,566.79 in reimbursable prejudgment costs. Blakey also seeks prejudgment interest in the amount of $192,835.61.[3]

Not surprisingly, Continental objects. Continental first argues that Blakey's fees are unreasonable because her calculations include fees for work that was undocumented, duplicative and improper. Continental also challenges Blakey's inclusion of fees for work on claims that were ultimately unsuccessful before the jury. Continental further asserts that Blakey is not entitled to a contingency enhancement or to prejudgment interest. The Court heard oral argument on the issue of fees on March 20, 1998.

## II. DISCUSSION

### A. Blakey's Entitlement to Attorney's Fees

A prevailing party is entitled to recover reasonable costs and attorney's fees under both Title VII and LAD. *See* 42 U.S.C. § 2000e–5(k); N.J.S.A. 10:5–27.1.[4] A "pre-

3. Blakey's calculation is based on the entire preremittitur award of $875,000. Because the award has been remitted, the prejudgment interest figure must be modified.

4. This Court has pendent jurisdiction over Blakey's LAD claims pursuant to 28 U.S.C. § 1367(a). *See* Final Pretrial Order at 1.

vailing" plaintiff entitled to a fee award is one who has succeeded on "any significant issue in litigation which achieves some of the benefit the part[y] sought in bringing the suit." *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) (quoting *Nadeau v. Helgemoe,* 581 F.2d 275, 278–79 (1st Cir.1978)). Although Blakey did not succeed on all claims, she is still a prevailing party because she succeeded on her sexual harassment claim. She is therefore entitled to a reasonable fee award under both Title VII and LAD.

### B. *Reasonable Attorney's Fees and Costs*

Federal and state law on attorney's fee awards is generally similar, with the major exception of the contingency enhancement, discussed below in Section B.3, which is only available under state law. Since the parties did not ask the jury to make separate findings on the Title VII and LAD claims and because Blakey prevailed on claims that exist under LAD, New Jersey law will be used where applicable.

The starting point for determining any reasonable fee is to calculate a "lodestar" amount; that is, the number of hours reasonably expended multiplied by a reasonable hourly rate. *Hensley,* 461 U.S. at 433; *Rendine v. Pantzer,* 141 N.J. 292, 334–35, 661 A.2d 1202 (1995). The lodestar calculation requires the Court to "carefully and critically" evaluate the hours and the hourly rate put forth by counsel. *Rendine,* 141 N.J. at 334–35, 661 A.2d 1202. The party requesting fees bears the burden of proving that the request is reasonable. In response, the party challenging the fee petition must make specific objections to the requested fee. *Rode v. Dellarciprete,* 892 F.2d 1177, 1183 (3d Cir.1990). The district court cannot decrease a fee award based on factors not raised at all by the adverse party. *Id.* However, once the adverse party raises specific objections to the fee request, the district court has a great deal of discretion to adjust the award in light of those objections. *Id.*

#### 1. *Reasonable Rate*

In determining a reasonable hourly rate, the court should assess the skill and experience of the prevailing attorneys and compare their rates to the rates in the com-

munity for similar services by lawyers of reasonably comparable skill, experience and reputation. *Rendine,* 141 N.J. at 337, 661 A.2d 1202. Furthermore, to take into account delay in payment, the hourly rate should be based on current rates rather than the rates in effect when the services were performed. *Id.*

Blakey seeks an award of fees for her attorneys at the following hourly rates:

| | Requested Rate |
| --- | --- |
| David E. Breskin (Lead Counsel): | $350 |
| Linda B. Kenney (Lead Counsel): | $350 |
| Margaret E. Easton (Partner): | $250 |
| Gregory S. Schaer (Associate): | $250 |
| Nancy S. Martin (Associate): | $200 |
| Chris Farias (Contract Attorney): | $195 |
| Jennifer Dike (Associate): | $155 |
| Joseph P. Kreoll (Associate): | $150 |
| Darren M. Gelber (Associate): | $150 |
| Sharra A. Greer (Associate): | $150 |
| Barbara Bell (Paralegal): | $100 |
| Joanne Lane (Paralegal): | $85 |

Kenney states that her current rate is $350/hour. In support of the requested rate of $350/hour, Kenney submits affidavits from several practitioners asserting that her former rate of $300/hour is reasonable. Breskin relies on the same affidavits in support of his request for $350/hour. Although the Court agrees that Kenney and Breskin are skilled and experienced attorneys specializing in the field of employment law, they have not presented sufficient evidence that the prevailing rate in New Jersey's legal community for lawyers of comparable skill and experience is as high as $350/hour.

The Court does not have the benefit of expert testimony on the prevailing billing rates in the employment law field. In the future, this Court will appoint its own expert to advise the Court on this issue. The Court has been presented with the affidavits of practitioners and the opinions of other courts. Of the eight affidavits submitted in support of Kenney's and Breskin's requested rate, only two refer to rates as high as $350/hour, and those references are conclusory and unsupported. *See* Certification of Pat Breuninger, Kenney Cert., Exh. C (stating generally that "many other attorneys in this area with similar qualifications and expertise [are] billing at rates as high as $350.00 per

hour"); Certification of Neil Mullin, Kenney Cert., Exh. P (same). No affidavits were submitted from attorneys who actually bill clients at $350/hour. Furthermore, these two affidavits must be considered in light of the several other affidavits indicating that $300/hour is the prevailing market rate for plaintiffs' employment lawyers.[5]

Similarly, $300/hour is the highest rate reflected in the eight judicial opinions submitted to the Court. *See, e.g., Montels v. Haynes,* Kenney Cert., Exh. B (awarding Kenney $300/hour in January 1997). Continental has not directly contradicted $300/hour as unreasonable. There is some merit to Continental's argument that Kenney's affidavits are from members of the plaintiffs' bar who stand to benefit from self-serving declarations. But the certifications submitted by Continental reflect the hourly rates of the defendants' bar, who operate under very different economic imperatives. These certifications, without more, are not relevant bases for comparison. *See Washington v. Philadelphia County Court of Common Pleas,* 89 F.3d 1031, 1036 (3d Cir.1996). The rate that Blakey's certifications will support, and the rate that the Court finds reasonable, in light of the evidence presented, is $300/hour for both Kenney and Breskin.[6]

■ Blakey also seeks fees for work performed by various associates at rates ranging from $150/hour to $250/hour. The Court finds that although Gregory Schaer is a skilled attorney with experience in the field, $250/hour is *not* a reasonable billing rate for a seventh-year associate. The Court has seen no affidavits supporting a billing rate this high for associates. Recent decisions have awarded much less than $250/hour for Schaer's work. As Judge Bachman said in compensating Schear's time at $150/hour, "He may be approaching that [$250/hour], but he's not there yet." Kenney Cert., Exh. Q. *See also Wolak v. Borough of Matawan,* Kenney Cert., Exh. S (compensating Schaer's time at $150/hour in August 1996); *Coleman v. Kaye,* Kenney Cert., Exh. T (compensating

Schaer's time at $150/hour in November 1996). The Court finds that a reasonable rate for Schaer's time is $175/hour.

The Court finds $150/hour to be a reasonable rate for most of the associates listed in the fee application. *See* "Jersey Lags Behind Rates of East Coast Firms," *New Jersey Lawyer,* Jan. 5, 1998 at 3 (noting that associates' billing rates at several New Jersey law firms ranged from $90 to $220). However, the Court finds that a reasonable rate for Jennifer Dike, a second-year associate, to be $100/hour. *See id.* (noting that associates' billing rates at firms started at approximately $90 for junior associates).

Finally, Blakey seeks $100/hour for the work of Barbara Bell, a paralegal at Short Cressman & Burgess, and $85/hour for the work of Joanne Lane, a paralegal with Linda Kenney's office. Although Bell has a law degree, her billing entries show that she performed traditional paralegal functions. The Court has seen no certifications or other evidence supporting a rate of $100/hour for paralegals, which is higher than the rate for junior associates at many New Jersey law firms. *See id.* at 3. Courts have uniformly compensated paralegal work at far less than $100/hour. *See, e.g., Romano v. Brown & Williamson,* Kenney Cert., Exh. Q (compensating law clerk time at $60/hour); *Wolak v. Borough of Matawan,* Kenney Cert., Exh. S (compensating paralegal time at $60/hour); *Hurley v. Atlantic City Police Dept.,* 933 F.Supp. 396 (D.N.J.1996) (compensating paralegal time at $50/hour).

There is, however, some evidence that paralegal rates of approximately $80–85/hour are considered reasonable. *See Coleman v. Kaye,* Kenney Cert., Exh. T (compensating paralegal time for appeal at $85/hour); *Landano v. United States Dept. of Justice,* Kenney Cert., Exh. K (compensating paralegal time at $80/hour). Keeping in mind that courts have compensated paralegal work in the range of $60–85/hour, the Court finds

---

5. Even this rate is suspect. It may be the rate plaintiffs' counsel are billing under contingent fee arrangements with the expectation of payment under fee-shifting statutes rather than the rate actually billed and paid under a non-contingent fee agreement.

6. Although fees are generally awarded at the attorney's current rate, there is nothing in the law that requires this when the attorney's requested hourly rate is unreasonable.

that $80/hour is a reasonable rate for all paralegal time.

Therefore the Court will apply the following reasonable hourly rates to calculate the lodestar fee:

| | Reasonable Rate |
|---|---|
| David E. Breskin (Lead Counsel): | $300 |
| Linda B. Kenney (Lead Counsel): | $300 |
| Margaret E. Easton (Partner): | $250 |
| Gregory S. Schaer (Associate): | $175 |
| Nancy S. Martin (Associate): | $150 |
| Chris Farias (Contract Attorney): | $150 |
| Joseph P. Kreoll (Associate): | $150 |
| Darren M. Gelber (Associate): | $150 |
| Sharra A. Greer (Associate): | $150 |
| Jennifer Dike (Associate): | $100 |
| Barbara Bell (Paralegal): | $ 80 |
| Joanne Lane (Paralegal): | $ 80 |

2. *Reasonable Hours*

The Court is not obligated to accept an attorney's representation of the time expended as time "reasonably" expended. *Rendine*, 141 N.J. at 335, 661 A.2d 1202. No compensation is due for "nonproductive" time, for example, or for hours that are "excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434. For example, "where three attorneys are present at a hearing where one would suffice, compensation should be denied for the excess time." *Copeland v. Marshall*, 641 F.2d 880, 891 (D.C.Cir.1980). The Court may also deduct hours that are inadequately documented. *Rendine*, 141 N.J. at 335, 661 A.2d 1202. The presentation of billable hours should be in sufficient detail to permit the Court to determine how the hours were divided among various attorneys, for example. *Id.* at 337, 661 A.2d 1202.

Continental challenges several billing entries as excessive, duplicative, or unnecessary expenditures. Some of Continental's objections are without merit. For example, Continental argues that the case was overstaffed, pointing to the attendance of three attorneys at mediation, settlement conferences, and motion hearings. Continental further asserts that the "attendance of more than one

attorney at depositions is also unnecessary." Defendant's Brief at 11. Continental's assertion that the presence of several attorneys at conferences or depositions constitutes "overstaffing" has little force in this case since Continental often, if not always, had more than one attorney present. In a complex case, or one as fractious as this, it is reasonable to have more than one attorney present at meetings or depositions in order to effectively litigate the case.

Continental also objects to travel and lodging related expenses for David Breskin, Blakey's Seattle-based attorney. Continental, however, bears much of the responsibility for this situation, since it sought and received a transfer of venue from Washington State to New Jersey. Blakey was not required to fire her original lawyer because Continental obtained a change of venue.

Continental also objects that Blakey's attorneys improperly billed time for a paralegal to locate office space and housing for Blakey and her attorney in New Jersey. Continental further resists paying for the time spent by Blakey's counsel for self-promotion in the media.[7] Blakey responded by voluntarily offering to reduce or deduct certain entries. Although Blakey asserts that her offer to deduct time was made "with the understanding that plaintiff's applications for fees and costs will not otherwise be reduced," Schaer Supp. Cert., ¶ 6, it is the Court's duty to independently review the billing entries and exclude hours not reasonably expended. *Hensley*, 461 U.S. at 434. The Court is not bound to allow unreasonable hours to be compensated simply because a plaintiff volunteers to voluntarily subtract some obviously improper billings.

"Hours that are not properly billed to one's client also are not properly billed to one's *adversary* pursuant to statutory authority." *Copeland*, 641 F.2d at 891. Billing for time spent contacting the media is highly

---

7. Continental's attorney states in his brief that:
 Both Mr. Schaer and Barbara Bell have submitted records for time spent on plaintiff's contact with the news media. For example, Ms. Bell billed for a telephone call to ABC for a "possible news story." Mr. Schaer similarly billed for a telephone call to the Philadelphia Inquirer. Ms. Kenney has listed in her expenses several items related to "press releases."
 These hours and expenses are not recoverable under Title VII or LAD. They have no relationship to the prosecution of plaintiff's claims.
 Defendant's Brief at 11.

inappropriate. It takes a lot of *chutzpah* to not only participate in such media contact during the litigation, but to bill for it.[8]

█ Similarly, administrative tasks, such as arranging office space, should come under firm overhead and should not billed to the client as paralegal (or attorney) work. "[P]urely clerical or secretarial tasks should not be billed at a paralegal rate, regardless of who performs them." *Missouri v. Jenkins*, 491 U.S. 274, 288 n. 10, 109 S.Ct. 2463, 105 L.Ed.2d 229 (1989). The Court has reviewed Blakey's fee entries and has set out in Appendix A these and other instances of excessive, duplicative or unnecessary expenditures that will be deducted. Where appropriate, instead of excluding the entire entry, the Court reduced the entry to reflect a reasonable time for the activities described. The total hours that have been deducted are as follows:

| | |
|---|---|
| Linda B. Kenney: | 33.3 hours |
| David E. Breskin: | 2.6 hours |
| Gregory S. Schaer: | 13.8 hours |
| Nancy S. Martin: | 1.0 hours |
| Joseph P. Kreoll: | .2 hours |
| Sharra A. Greer: | .2 hours |
| Joanne A. Lane: | 7.7 hours |
| Barbara Bell: | 136.4 hours |

Continental's major opposition to Blakey's fee request centers on the argument that she was unsuccessful on most of her original claims. Indeed, the vast majority of Continental's specific objections to billing entries are that Blakey was "unsuccessful." Blakey originally asserted six causes of action: (1) hostile work environment; (2) disparate treatment; (3) retaliation; (4) violation of CEPA; (5) defamation; and (6) violation of public policy. Blakey's public policy claim was dismissed by the Court on June 16, 1995. The Court dismissed her defamation claim on summary judgment on March 24, 1997. The CEPA claim was dismissed voluntarily, and was essentially duplicative of her LAD claims. The jury rejected Blakey's disparate

treatment and retaliation claims and reduced her back pay award for failure to mitigate damages. Ultimately Blakey only succeeded on hostile work environment, and received back pay, front pay and compensatory (but not punitive) damages. Continental argues that the thousands of hours expended by Blakey's attorneys pursuing all of these claims were entirely unreasonable when compared to her very limited success.

█ The Court notes that while there is no requirement that the fee award be proportional to the damages recovered in the litigation, *Szczepanski v. Newcomb Medical Center*, 141 N.J. 346, 366, 661 A.2d 1232 (1995), limited success may limit the fees awarded. If a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may still be an excessive amount. *Hensley*, 461 U.S. at 436.

█ When the prevailing party has only succeeded on some claims, the court must address (1) whether the unsuccessful claims were unrelated to the successful claims; and (2) whether the plaintiff achieved a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award. *Hensley*, 461 U.S. at 434. Work on an unsuccessful claim that is based on distinctly different facts and theories cannot be compensated. *Id.* at 434–35. For example, Blakey's defamation claim is unrelated to her discrimination claims. Defamation is a common law cause of action, for which there is no automatic fee-shifting authority, as in Title VII or LAD. Although Blakey was permitted to introduce the computer "threads" (derogatory comments by fellow pilots posted on a computer bulletin board) that form the basis of her defamation claim at trial, the threads were introduced

---

**8.** Continental's attorney contends that these statements to the media violate Local Civil Rule 105.1. Defendant's Brief at 11. However, without knowing what statements were actually made to the media, the Court has no way to assess that allegation. Subject to important exceptions in Local Civil Rule 105.1(c), the Rule cited to by Continental provides:

A lawyer representing a party in a civil matter triable to a jury shall not make any extrajudi-

cial statement that a reasonable person would expect to be disseminated by means of public communication if the lawyer or other person knows or reasonably should know that it will have a substantial likelihood of causing material prejudice to an adjudicative proceeding.

Lite, N.J. Federal Practice Rules, L.Civ.R. 105.1(a).

for a different purpose. Additionally, Blakey is pursuing her defamation claims against individual defendants in the New Jersey Superior Court. It is unfair to expect Continental to pay for work that benefits a completely separate lawsuit. To the extent that any attorney's fees would be available for these claims, she may collect them in the state court action. The Court therefore finds it is appropriate to deduct hours that were devoted solely to the defamation claim. The following entries will be excluded:

*Gregory S. Schaer*

* Slip # 19558 on December 12, 1995, billing 1.3 hours of time;

*Nancy S. Martin*

* Slip # 15190 on July 24, 1995, billing 4.20 hours of time;
* Slip # 15203 on July 26, 1995, billing 4.50 hours of time;
* Slip # 15205 on July 27, 1995, billing 2.0 hours of time;
* Slip # 15206 on July 27, 1995, billing 1.50 hours of time;
* Slip # 15219 on July 31, 1995, billing 1.0 hours of time;
* Slip # 15252 on August 4, 1995, billing 2.0 hours of time;
* Slip # 15279 on August 14, 1995, billing 7.5 hours of time;
* Slip # 15283 on August 15, 1995, billing 3.8 hours of time;
* Slip # 15645 on August 23, 1995, billing 0.3 hours of time;
* Slip # 16177 on September 5, 1995, billing 0.4 hours of time;
* Slip # 16334 on September 11, 1995, billing 0.4 hours of time;
* Slip # 16336 on September 11, 1995, billing 0.2 hours of time;
* Slip # 17562 on October 14, 1995, billing 2.8 hours of time.

*Joseph P. Kreoll*

* Slip # 32861 on October 2, 1996, billing 1.0 hours.

Therefore the hours that will be deducted for time spent on the defamation claim are as follows:

Gregory S. Schaer: 1.3 hours

Nancy S. Martin: 30.6 hours
Joseph P. Kreoll: 1.0 hours.

After these deductions for excessive, duplicative and unnecessary work, and for work on the defamation claim, the revised prejudgment lodestar figures, set forth in Schedule A, are:

Law Offices of Linda B. Kenney: $388,475.50
Short Cressman & Burgess: $517,844.00

■ Subtracting time spent on the defamation claim does not end the inquiry on the reasonableness of Blakey's fee request. Blakey was also unsuccessful on several discrimination claims related to her hostile environment claim. "[A] trial court should reduce the lodestar fee if the level of success achieved in the litigation is limited as compared to the relief sought." *Rendine*, 141 N.J. at 336, 661 A.2d 1202. Although in this case, the Court could identify a few entries that specifically refer to an unsuccessful cause of action, most cases, especially discrimination cases, "involve a common core of facts or [are] based on related legal theories." *Hensley*, 461 U.S. at 435. They cannot be easily divided into discrete claims. Given the nature of the claims in this case, the Court would not be able to identify the work required for her sexual harassment claim as distinguished from her other discrimination claims, for example. It is unrealistic to suppose that her attorneys would divide their time entries based on closely related causes of action.

■ In these types of cases where the claims are interrelated, a court should not attempt to identify specific hours spent on related, but unsuccessful claims and exclude them from the lodestar. *Johnson v. Orr*, 897 F.2d 128, 132 (3d Cir.1990) (Becker, J., concurring). A court should instead focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation. *Hensley*, 461 U.S. at 435. A reduced fee is appropriate if the relief, however significant, is limited in comparison to the scope of litigation as a whole. *Id.* at 440; *Rendine*, 141 N.J. at 337, 661 A.2d 1202. "A court must reduce the fee award if 'it concludes the benefits of the litigation were not substantial enough to merit the full amount of the lodestar.'"

*McDonnell v. United States,* 870 F.Supp. 576, 587 (D.N.J.1994) (*quoting Poston v. Fox,* 577 F.Supp. 915, 921 (D.N.J.1984)).

Continental's attempt to automatically exclude every expenditure on which Blakey was ultimately unsuccessful must be rejected. Hours may be reasonably expended on a reasonable strategy that simply does not succeed. "The mere failure of certain motions or the failure to use depositions is insufficient to warrant a fee reduction under *Hensley*." *Blum v. Witco Chem. Corp.,* 829 F.2d 367, 378 (3d Cir.1987). Similarly, Continental's attempt to exclude all trial time, based on the fact that "the majority of plaintiff's claim at trial [was] unsuccessful," takes its position to ridiculous lengths.

However, over the five year (and continuing) course of this litigation, Blakey pursued a very wide range of discovery, listing over 100 potential witnesses. Most of these witnesses were not used at trial. She obtained two high-priced law firms to represent her. Where a party expends great time and money in pursuing claims, the Court must consider whether this time was reasonable in relation to the ultimate result. Blakey's overall success was limited, compared to the relief she sought. She did not prevail on her retaliation or disparate treatment claims, nor did she succeed on her punitive damages claim, which is what was driving this litigation. The Court therefore concludes that the overall time spent on this case, including the many hours spent by two senior attorneys, is excessive, given her limited success, and that a reduction in the lodestar is appropriate. *See, e.g., McDonnell,* 870 F.Supp. at 589 (reducing lodestar by 60% for lack of overall success); *Field v. Haddonfield Board of Education,* 769 F.Supp. 1313, 1323 (D.N.J.1991) (reducing lodestar by 50% for lack of overall success); *Scales v. J.C. Bradford & Co.,* 925 F.2d 901, 910 (6th Cir.1991)(reducing lodestar by 50% for lack of overall success). The Court will therefore reduce the overall lodestar figure for both firms' prejudgment work by 30%.

The Court will *not* reduce the post-judgment fees, which were largely necessitated by Continental's posttrial motions and this fee application. The reduced lodestar figures, set forth in Schedules A and B, are:

THE LAW OFFICES OF LINDA KENNEY:
| | |
|---|---|
| Prejudgment Adjusted Lodestar: | $ 271,932.85 |
| Postjudgment Lodestar: | $ 21,035.00 |

SHORT CRESSMAN & BURGESS:
| | |
|---|---|
| Prejudgment Adjusted Lodestar: | $ 362,490.80 |
| Postjudgment Lodestar: | $ 77,470.00 |

### 3. *Contingency Enhancement*

■ The United States Supreme Court has held that contingency enhancements are not available under federal fee-shifting statutes. *City of Burlington v. Dague,* 505 U.S. 557, 566–67, 112 S.Ct. 2638, 120 L.Ed.2d 449 (1992).[9] The New Jersey Supreme Court, however, has explicitly disagreed with *Dague* and instructed trial courts making fee awards under LAD to "consider whether to increase [the lodestar] fee to reflect the risk of nonpayment in all cases in which the attorney's compensation entirely or substantially is contingent on a successful outcome." *Rendine,* 141 N.J. at 337, 661 A.2d 1202.

The New Jersey Supreme Court has stated that contingency enhancements should ordinarily range between 5% and 50% of the lodestar award, with the typical enhancement being 20%–35%. *Id.* Blakey seeks a 50% enhancement, at the high end of the range set forth by *Rendine.*

■ In deciding whether to enhance the lodestar award, *Rendine* states that consideration must be given to whether the case was taken on a contingent basis, whether the attorney was able to mitigate the risk of nonpayment in any way, and whether other economic risks were aggravated by the contingency of payment. *Id.* at 339, 661 A.2d 1202. The strength of the plaintiff's case is also a factor. *Id.* at 340–41, 661 A.2d 1202. Attorneys may mitigate their risk of nonpayment by accepting some payments regardless of outcome, for example. *Id.* at 340, 661 A.2d 1202. The Court may consider the contingent fee agreement in determining whether

---

**9.** The Supreme Court concluded that contingency enhancements duplicate the incentives already found in the lodestar, and that a reasonable fee could be determined without applying the contingent-fee model: "It is neither necessary nor even possible for application of the fee-shifting statutes to mimic the intricacies of the fee-paying market in every aspect." *Dague,* 505 U.S. at 566–67.

attorneys have mitigated their risk of non-payment. The risk of nonpayment may be "somewhat offset by the prospect of substantial compensation, independent of the court-awarded fee, in the event of a large recovery." *See id.* at 344–45, 661 A.2d 1202. Attorneys *who pursue a suit seeking substantial damages* significantly reduce their risk because they obtain, in exchange for the acceptance of risk of nonpayment, the prospect of compensation greater than the prospective lodestar amount. *Id.* Nevertheless, the risk of nonpayment may remain substantial despite these factors because of specific problems in proof, the hazards inherent in all litigation and the vigorous defense of an adversary. *Id.*

The Court finds that Blakey's attorneys did mitigate their risk of nonpayment. Blakey had strong evidence of sexual harassment, including graphic evidence of pornography, and equally strong evidence of Continental's failure to promptly and effectively respond to her complaints. "[O]ne can fairly conclude that from the outset the plaintiff had a very strong case and 'objectively viewed, the risk that plaintiff['s] counsel would come away empty handed was remote.'" *Hall v. Borough of Roselle,* 747 F.2d 838, 843–44 (3d Cir.1984) (*quoting McMullan v. Thornburgh,* 570 F.Supp. 1070, 1076 (E.D.Pa.1983)). It is highly unlikely that experienced employment lawyers such as Breskin and Kenney would have taken on a contingency case of this magnitude if they felt there was very little chance of success.

The low level of risk in this case was in fact recognized by Blakey's own counsel. Blakey's New Jersey counsel, Linda Kenney, observed on the MSNBC television show "Internight" after the trial that the strength of Blakey's case was "why [her] case is one that can bring the whole issue to the forefront; because there's no doubt; it is a no-brainer; it is real." Bernstein Aff., Exh. B.[10] The risk of nonpayment was also attenuated by the opportunity for a substantial fee independent of the court-awarded fee, in the even of a large recovery; an *in camera* review of the fee agreement reveals that her attorneys accounted for some of the risk of nonpayment

through the fee arrangements. Considering the criteria required by *Rendine,* the Court concludes that the facts of this case cannot support the requested contingency enhancement of 50%.

Continental argues that Blakey is not entitled to any enhancement because her attorneys assumed no risk of nonpayment at all. The Court cannot agree. Although the existence of a particularly strong case reduces the amount of the contingency enhancement, some risk of nonpayment always exists when a defendant offers "vigorous resistance" to each of a plaintiff's claims. *Rendine,* 141 N.J. at 345, 661 A.2d 1202. Continental cannot deny that its litigation strategy was to consistently fight each of Blakey's claims. Therefore the Court concludes that an enhancement of 5% is warranted.

Blakey's calculation of fees submitted to the Court improperly applied an enhancement to costs as well. Blakey was able to pay approximately $145,000 of the costs of the lawsuit; the Court therefore sees little risk of nonpayment on costs. An enhancement on postjudgment fees is also inappropriate, since the risk of loss was substantially reduced after trial. *See H.I.P. v. K. Hovnanian at Mahwah,* 291 N.J.Super. 144, 162, 676 A.2d 1166 (Law Div.1996). In its motion for a new trial, Continental did not challenge the jury verdict on liability, only damages. Therefore, Blakey ran no risk of losing her entire award. The Court is also not persuaded that the potential diminution of Blakey's award by the bankruptcy court is an unusual risk weighing in favor of an enhancement. Blakey's situation is no different from any plaintiff dealing with an adversary in bankruptcy. Furthermore, the risk of reduction of an award after trial is one faced by every litigant. Continental's extensive opposition to this motion for fees was reasonable in light of the significant fees requested. Blakey's attorneys ran little risk of nonpayment after the judgment. The Court will therefore grant Blakey a 5% contingency enhancement on the prejudgment attorney's fees only. The prejudgment lodestar figures, after the 30% downward adjustment and the 5% con-

---

**10.** That Continental did not even attempt to challenge the liability determination on its motion for

a new trial is further evidence of the strength of Blakey's case on sexual harassment.

tingency enhancement, are set forth in Schedules A and B:

THE LAW OFFICES OF LINDA B. KENNEY:

| Prejudgment Adjusted & Enhanced | |
|---|---|
| Lodestar: | $285,529.49 |
| Postjudgment Lodestar: | $ 21,035.00 |
| TOTAL FEES: | $306,564.49 |

SHORT CRESSMAN & BURGESS:

| Prejudgment Adjusted & Enhanced | |
|---|---|
| Lodestar: | $380,615.34 |
| Postjudgment Lodestar: | $ 77,470.00 |
| TOTAL FEES: | $458,085.34 |

### 4. *Costs*

Blakey also seeks an award of costs for the lawsuit. She has submitted a certification stating that she has personally paid $145,083 in costs.[11] In addition, her law firms have submitted records indicating that they have incurred the following costs during the pendency of the lawsuit:

THE LAW OFFICES OF LINDA B. KENNEY:

| Prejudgment Costs: | $ 11,522.97 |
|---|---|
| Postjudgment Costs: | $ 1,828.36 |
| TOTAL | $ 13,351.33 |

SHORT CRESSMAN & BURGESS:

| Prejudgment Costs: | $ 37,753.16 |
|---|---|
| Postjudgment Costs: | $ 14,724.75 |
| TOTAL | $ 52,477.91 |

The Court has reviewed the costs and finds that they are reasonable in the context of a long and expensive lawsuit. As discussed in Section B.3, above, the Court will not apply a contingency enhancement to the costs of the lawsuit. As set forth in Schedule C, Blakey is awarded costs in the amount of $ 210,912.24. Blakey's total attorney's fees and costs award is set forth in Schedule D.

### C. *Prejudgment Interest*

Prejudgment interest is available as a remedy under both Title VII, *Loeffler v. Frank,* 486 U.S. 549, 108 S.Ct. 1965, 100 L.Ed.2d 549 (1988), and LAD, *Gallo v. Salesian Society, Inc.,* 290 N.J.Super. 616, 676 A.2d 580 (App.Div.1996). Under Title VII, the question of whether to award prejudgment interest is committed to the sound discretion of the trial court. *Green v. USX Corp.,* 843 F.2d 1511, 1530 (3d Cir.1988), *vacated on other grounds,* 490 U.S. 1103, 109 S.Ct. 3151, 104 L.Ed.2d 1015 (1989). However, there is a strong presumption in favor of an award of prejudgment interest, unless the award would result in "unusual inequities."

*Booker v. Taylor Milk Co., Inc.,* 64 F.3d 860, 868 (3d Cir.1995).

Prejudgment interest in LAD cases is *mandated* by New Jersey Court Rule 4:42–11(b), which states that a court "shall, in tort actions ... include in the judgment simple interest ... from the date of the institution of the action or from a date 6 months after the date the cause of action arises, whichever is later". A prejudgment interest award compensates the plaintiff for the defendant's use of her money after the cause of action accrued. *Hurley v. Atlantic City Police Dept.,* 933 F.Supp. 396, 431 (D.N.J.1996). It is an equitable remedy intended to make a plaintiff "whole." *Davis v. Rutgers Casualty Ins. Co.,* 964 F.Supp. 560, 575 (D.N.J.1997). Although Continental argues that prejudgment interest may not be awarded on noneconomic damages, the New Jersey court rule does not contain this exception. Continental has cited no New Jersey cases interpreting the rule to exclude prejudgment interest on emotional distress damages. Therefore, Blakey is entitled to prejudgment interest on her entire remitted award.

Continental argues that awarding prejudgment interest would be a "windfall" to Blakey, because her back pay award is "more than adequate" to compensate Blakey for her lost wages. However, this contention is directly contrary to the strong policy in favor of making victims of discrimination whole. Because Blakey was found to be entitled to back pay and damages, she is entitled to prejudgment interest for the loss of the use of the amount included in her award. *See Booker,* 64 F.3d at 869.

In diversity cases, the Court should apply the methodology and calculation of prejudgment interest as set out in the New Jersey Court Rules. *McKenna v. Pacific Rail Service,* 817 F.Supp. 498, 518 n. 3 (D.N.J.1993). Therefore, the Court will award prejudgment interest calculated pursuant to New Jersey Court Rule 4:42–11(b). Blakey shall submit a new calculation of prejudgment interest on her remitted award in accordance with the New Jersey court rule.

---

**11.** Blakey claims to have paid an additional $1483.79 in costs. *See* Plaintiff's Brief in Support at 21. Since these costs are not reflected on any certification, the Court declines to include this amount in her award of costs.

D. *Segregation of Fees for Bankruptcy Proceeding*

 The parties now argue whether the cap on damages in the bankruptcy court applies to counsel fees. The parties stipulated during the course of the litigation that "any judgment obtained by [Blakey] in the courts of New Jersey for damages arising solely as a result of Continental's conduct beginning as of the Petition Date [December 3, 1990] and continuing through and including the date of the Confirmation Order [April 16, 1993] shall be assertable against Continental's bankruptcy estate only to the extent of up to one million dollars ($1,000,000.00)." In order to easily determine the amount of damages covered by this cap, the Court, at counsel's request, instructed the jury to segregate the damages. Blakey argues that this stipulation does not cover attorney's fees. Continental argues that this $1 million cap applies to attorney's fees as well, and therefore, the Court must segregate fees expended on litigating actions that occurred after April 16, 1993.

The plain language of the stipulation only refers to a judgment for "damages," not "costs" or "fees." However, the Court is unable to determine whether the parties actually intended attorney's fees to be covered by the cap. The addition of close to $1 million to the claims against Continental's estate is not an insubstantial amount. The purpose of the bankruptcy stipulation was to simplify the administration of Continental's bankrupt estate and to provide some certainty in terms of the amount of Blakey's claim against the estate. The Court is reluctant to interpret the stipulation in a way that would hinder the policy of the bankruptcy laws or that would contravene the intent of the parties.

The stipulation itself provides that the Bankruptcy Court "shall retain jurisdiction to resolve any disputes between the parties arising with respect to this Stipulation...." The Bankruptcy Court is the appropriate court to interpret the stipulation and to de-cide whether attorney's fees are covered by the $1 million cap. By segregating the attorney's fees and costs, which Continental requests, the Court in effect would be deciding the issue for the Bankruptcy Court. The Court will therefore award unsegregated fees and costs.

## III. *CONCLUSION*

For the foregoing reasons, the Court awards Blakey $764,649.83 in attorney's fees, $210,912.24 in costs and prejudgment interest on her remitted award in accordance with New Jersey Court Rule 4:42–11(b). An appropriate order follows.

### *ORDER*

This matter having come before the Court upon the motion of Plaintiff Tammy S. Blakey for attorney's fees, costs and prejudgment interest pursuant to 42 U.S.C. § 2000e–5(k) and N.J.S.A. 10:5–27.1;

The Court having considered the submissions of the parties and the argument of counsel;

For the reasons set forth in the Court's Opinion filed this day; and

For good cause shown;

It is this 9th day of April 1998, hereby ORDERED that Plaintiff is awarded $764,-649.83 in attorney's fees and $210,912.24 in costs;

It is further ORDERED that Plaintiff is entitled to prejudgment interest on her remitted award in accordance with New Jersey Court Rule 4:42–11(b);

It is further ORDERED that Plaintiff shall submit a proposed judgment reflecting the award of attorney's fees, costs, and calculating prejudgment interest in accordance with New Jersey Court Rule 4:42–11(b) within ten (10) days of receipt of this order. A copy of the proposed judgment shall be submitted to opposing counsel for review as to form and calculation of interest.

### APPENDIX A

SCHEDULE A: PREJUDGMENT ATTORNEY'S FEE

## LAW OFFICES OF LINDA B. KENNEY

| Attorney | Requested Hourly Rate | Requested Hours | Reasonable Hourly Rate | Reasonable Hours | Total |
|---|---|---|---|---|---|
| Linda B. Kenney | $350.00 | 652.20 | $300.00 | 618.90 | $185,670.00 |
| Gregory S. Schaer | $250.00 | 1001.40 | $175.00 | 986.30 | $172,602.50 |
| Nancy S. Martin | $200.00 | 59.40 | $150.00 | 27.80 | $4,170.00 |
| Joseph P. Kreoll | $150.00 | 37.00 | $150.00 | 35.80 | $5,370.00 |
| Darren M. Gelber | $150.00 | 79.60 | $150.00 | 79.60 | $11,940.00 |
| Sharra A. Greer | $150.00 | .70 | $150.00 | 0.50 | $75.00 |
| Joanne Lane | $85.00 | 115.80 | $80.00 | 108.10 | $8,648.00 |
| | | | | **LODESTAR** | $388,475.50 |
| | | | | **−30% LACK OF SUCCESS** | ($116,542.65) |
| | | | | **SUBTOTAL** | $271,932.85 |
| | | | | **+5% CONTINGENCY ENHANCEMENT** | $13,596.64 |
| | | | | **TOTAL** | $285,529.49 |

## SHORT CRESSMAN & BURGESS

| Attorney | Requested Hourly Rate | Requested Hours | Reasonable Hourly Rate | Reasonable Hours | Total |
|---|---|---|---|---|---|
| David E. Breskin | $350.00 | 1313.20 | $300.00 | 1310.60 | $393,180.00 |
| Margaret E. Easton | $250.00 | 118.20 | $250.00 | 118.20 | $29,550.00 |
| Chris Farias | $195.00 | 142.40 | $150.00 | 142.40 | $21,360.00 |
| Jennifer Dike | $155.00 | 78.10 | $100.00 | 78.10 | $7,810.00 |
| Barbara Bell | $100.00 | 960.70 | $80.00 | 824.30 | $65,944.00 |
| | | | | **LODESTAR** | $517,844.00 |
| | | | | **−30% LACK OF SUCCESS** | ($155,353.20) |
| | | | | **SUBTOTAL** | $362,490.80 |
| | | | | **+5% CONTINGENCY ENHANCEMENT** | $18,124.54 |
| | | | | **TOTAL** | $380,615.34 |

### SCHEDULE B: POSTJUDGMENT ATTORNEY'S FEES

## LAW OFFICES OF LINDA B. KENNEY

| Attorney | Requested Hourly Rate | Requested Hours | Reasonable Hourly Rate | Reasonable Hours | Total |
|---|---|---|---|---|---|
| Linda B. Kenney | $350.00 | 29.70 | $300.00 | 29.70 | $8,910.00 |
| Gregory S. Schaer | $250.00 | 69.20 | $175.00 | 69.20 | $12,110.00 |
| Nancy S. Martin | $200.00 | 0.10 | $150.00 | 0.10 | $15.00 |
| | | | | **TOTAL** | $21,035.00 |

## SHORT CRESSMAN & BURGESS

| Attorney | Requested Hourly Rate | Requested Hours | Reasonable Hourly Rate | Reasonable Hours | Total |
|---|---|---|---|---|---|
| David E. Breskin | $350.00 | 228.10 | $300.00 | 228.10 | $68,430.00 |
| Barbara Bell | $100.00 | 113.00 | $80.00 | 113.00 | $9,040.00 |
| | | | | **TOTAL** | $77,470.00 |

### SCHEDULE C: COSTS

| Type of Costs | Total |
|---|---|
| Prejudgment Costs Paid by Blakey | $145,083.00 |
| Prejudgment Costs Paid by LBK | $11,522.97 |
| Prejudgment Costs Paid by SCB | $37,753.16 |
| Postjudgment Costs Paid by LBK | $1,828.36 |
| Postjudgment Costs Paid by SCB | $14,724.75 |
| **TOTAL COSTS** | $210,912.24 |

### SCHEDULE D: TOTAL ATTORNEY'S FEE AND COSTS AWARD